## P. C. BOYLE v. J. B. SMITHMAN.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF BUTLER COUNTY.

Argued October 21, 1891—Decided January 4, 1892.

[To be reported.]

(*a*) The act of May 22, 1878, P. L. 104, requires every corporation, com-
pany, or person, engaged in the business of transporting by pipe lines,
or storing crude or refined petroleum, to post by the tenth of each month,
a statement giving certain information respecting the business of the
preceding month, under a penalty of $1,000 for a failure so to do, and
$500 for each day's default thereafter:

1. In an action to recover penalties under said statute, the defendant can
neither be compelled to testify against himself, nor to produce his books
to be used as evidence against him. The court is bound to protect him
in the enjoyment of his privilege in this respect; and his refusal to pro-
duce his books cannot be commented on, or used as affording any pre-
sumption against him.

2. Such an action, however, is not a criminal case; and a point requesting
the court to charge that the jury are judges of both law and fact was
properly refused. It is the duty of the court to declare what the law is,
and it is the duty of the jury to apply to the facts, as found by them,
the law as given to them by the court.

3. A person engaged in the business of buying and selling oil on his own
account, using a pipe line, owned or controlled by himself, exclusively
for the purpose of collecting oil purchased by him, and transporting it
to storage tanks from which his sales are made, is not " engaged in the
business of transporting " oil, within the meaning of the statute.

4. In an action for penalties against a person claimed by the plaintiff to
be within the act, it is not competent for the plaintiff, in his case in chief,
to show how other pipe lines are operated; but the defendant, having
shown the manner of conducting his business, may show, for the infor-
mation of the jury, the methods adopted by others known to be common
carriers.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and
MITCHELL, JJ.

No. 244 October Term 1891, Sup. Ct.; court below, No. 24
December Term 1888, C. P.

On April 9, 1888, P. C. Boyle, for use of himself and the
county of Venango, brought assumpsit against J. B. Smithman,

to No. 164 April Term 1888 of the Court of Common Pleas of Venango county, to recover penalties under the act of May 22, 1878, P. L. 104, for not posting in the office of defendant the monthly statements required by § 5 of said act to be posted in the principal business office of every corporation, etc., and person engaged "in the business of transporting by pipe lines or storing crude or refined petroleum."

The statement of claim filed averred in substance that the defendant was continuously engaged, from October 1, 1887, to April 1, 1888, "in transporting by pipe lines crude petroleum," and at no time during said period did he post the statements required by said act, but, on the contrary, he wholly disregarded and ignored its provisions. The penalties sued for were itemized in the statement of claim as follows: For not posting statement on or before November 10, 1887, one thousand dollars; for each day's subsequent default as to said statement, down to the time of suit brought, five hundred dollars, aggregating seventy-five thousand five hundred dollars; for not posting in the months of December, 1887, and January, February and March, 1888, statements for the preceding months respectively, one thousand dollars in each instance, aggregating four thousand dollars: Total eighty thousand five hundred dollars. The court, on application of the defendant, having awarded a change of venue to Butler county, and an exemplification of the record having been filed to No. 24 December Term 1888, in the Court of Common Pleas of Butler county, the defendant on September 24, 1888, pleaded non-assumpsit.

On May 9, 1889, the plaintiff filed a motion for leave to amend, by adding to the name of the defendant upon the record the words "trading and doing business as J. B. Smithman & Co.," and by inserting, in that part of the statement of claim which described the defendant as engaged in transporting petroleum, the words "and storing," so that the defendant would be formally described and charged as transporting and storing petroleum. On June 6, 1889, the court, McMICHAEL, J., made the following order:

June 6, 1889, this motion presented in open court, and after hearing the attorneys of the parties, the amendment asked to add the words "trading and doing business as J. B. Smithman & Co." is allowed. The amendment asked to add the

words " and storing," so that the defendant will be formally charged and described as " transporting and storing petroleum " is refused; exception.[1]

At the trial, on November 12, 1889, plaintiff's counsel, after having opened his case to the jury, called the defendant, J. B. Smithman, and made the following offer :

Plaintiff's counsel having subpœnaed the defendant to produce certain papers, among them a book called a Sales Book, and specifically described in the subpœna, which subpœna was issued under the express order of this court, dated the nineteenth day of October, 1889, the defendant is now called, not to testify or to be sworn, but inquired of in the presence of the court, whether he has the book, and asked to produce it, that we may offer it in evidence : in other words, to answer orally, having failed to answer otherwise to the duces tecum ; this book being the property of the defendant, within his exclusive custody and control, and showing, as it does, the account of the defendant as a transporter of oil by pipe lines, whence transported, from what wells, the date of such transportation, the quantity of oil transported, the place of delivery, and in each instance the charges for pipeage, all under the control, direction and ownership of the defendant.

Objected to by the defence, to the witness being called and interrogated, or, in the presence of the court compelled to produce his books to be used in evidence against him, for the reason that this is a penal action and quasi criminal ; that, to compel him to testify or furnish evidence against himself, is in violation of the eighth and ninth sections of article I. of the constitution of Pennsylvania, and of articles IV. and V., amendments to the constitution of the United States ; that, to compel him to produce his books to be used in evidence against him, is an unwarranted search or seizure within the meaning of the constitutional provisions cited, and a compelling of him to give evidence against himself ; further, that a party can be compelled to produce books and writings only in the manner prescribed by the first section of the act of February 27, 1798, 3 Sm. L. 303.

By the court : We think that this question is really controlled by the authorities cited in this case in the argument ; and if this court pays any attention to the ground upon which

the case of Boyd v. United States, 116 U. S. 616, is decided, and also the case in 18 Wall. 516, as well as the principle recognized in 9 Phila. 223, we will have to sustain this objection. The objection is therefore sustained; exception.[2]

Afterwards, the plaintiff's counsel having made an offer of certain testimony, " to supply of necessity the want of the books which would themselves furnish the evidence we seek thus to supply," defendant's counsel objected as follows :

" The defence now objects to plaintiff's counsel continually referring to the books which have been ruled out, in their offers and otherwise, as to what they would have proven or shown if produced.

" Plaintiff's counsel claim the right during this trial and in the argument of the case to the jury, to refer to and draw any legitimate conclusion that can be drawn from the fact that the defendant refuses to produce his books."

By the court: The counsel will not be permitted during the argument of the case, nor during this trial, to refer to the fact that the defendant refuses to produce his books, as evidence in any way in favor of the plaintiff or against the defendant; exception.[3]

It was shown, by the testimony of witnesses, that during the period named in the statement of claim, the defendant was in possession and control of a pipe line extending from oil fields in Venango and Clarion counties to Oil City, and there connecting with large storage tanks, and that he transported through said pipe line to Oil City, large quantities of oil delivered to him by producers in the respective fields above referred to; that, about November 10, 1887, P. C. Boyle, who was the publisher of the Oil City Derrick, a newspaper giving special attention to oil statistics, went to the defendant's office in Oil City, and finding that no statement of the runs of the pipe line for the month of October was posted, saw the defendant and asked him about the matter, when the defendant said he did not propose to publish any statements, for the reason that certain persons in New York were interfering with his business, and he did not propose to give them any information concerning it; that, a number of times subsequently, Boyle sent the oil editor of the Derrick to the defendant's office to endeavor to secure monthly statements, and the defendant de-

clined to give them, for the reason that there were too many people interested, for him to give out the information, and for the further reason that the law concerning pipe lines had no application to him; and no statement was posted at any time by the defendant prior to the bringing of this suit.

Other testimony for the plaintiff tended to show, as was claimed, that the defendant transported oil belonging to other persons in his pipe line, while testimony for the defendant tended to show that all the oil so transported was delivered to him by producers upon an understanding that it should at once become his property, and that it was transported by him as such. Some of the evidence on this point is referred to in the charge of the court below, infra.

Joseph Manning, one of the witnesses called by the plaintiff, was asked by his counsel to state whether the man who delivers oil to a pipe line for transportation, and sells it while in the line, ever pays the pipeage or transportation charges.

Objected to by the defence, if it applies to all pipe lines, unless it is connected and has reference to this pipe line.

Plaintiff's counsel offered to show how other lines were operated, and that this one was operated in the same way.

By the court: We will confine this case to the facts in this case, and not go out to inquire except just so far as it be necessary in order to understand the testimony in this case. The objection is sustained, if the question be intended as general, but if it be intended to apply to Mr. Smithman, then it may be answered; exception.[5]

It was shown, however, in the course of the trial, that the pipeage on oil transported by other pipe lines, such as the National Transit Company, was always paid by the person who took it out of the lines; that the charge for pipeage in other pipe lines was twenty cents per barrel; that the defendant purchased all the oil carried in his line from the producers who patronized it, at the market price of oil with pipeage unpaid, and afterwards sold the same to refiners at the market price plus twenty cents per barrel, which sum represented his profits.

Plaintiff also offered to prove that certain specified pipe lines, "being all the lines in the state of Pennsylvania engaged in the business, did business in exactly the same manner that Smithman, the defendant here, did in this case: for the purpose

of showing that, as this, the pipe-line business, and the piping of oil, is a new business, and involves the question whether they are carriers of oil within the meaning of the provisions of the act of assembly under which pipe lines operate or carry on the business, if we show that all the lines in the state in the business, carry on a pipe-line business in exactly the same manner that Mr. Smithman does, it is an inevitable conclusion that he is carrying on a pipe-line business under the prohibition and under the penalty."

Objected to by the defence, the same as to the preceding offers.

By the court: The objection is sustained; exception.[6]

The defendant in his case in chief made the following offer:

Defendant's counsel now offer in evidence the National Transit Company's certificate, referred to in the examination heretofore and marked exhibit F, for the purpose of contradicting the plaintiff's claim that we carried on business the same as other pipe lines; for the purpose of showing what a certificate is; that this paper offered now is, in the language of the trade, a certificate.

Objected to by plaintiff's counsel, because the court, when the offer was made to prove by Joseph Manning on the stand, to be followed by the testimony of a number of other witnesses, the similarity in the conducting of the business of the various pipe lines, the National Transit named specially as one of them, the court ruled out the testimony as incompetent and irrelevant, and this is an offer to show negatively what we were refused, by the offers ruled out, to show affirmatively.

By the court: The objection is overruled, and the offer admitted, on precisely the same principle that your memorandum books or blank slips were offered; exception.[7]

The testimony being closed, the court, McMICHAEL, J., charged the jury in part as follows:

In this case, Mr. Boyle, the plaintiff, seeks to recover for the use of himself and the county of Venango, a certain amount of money from Mr. Smithman, the defendant, because, as he alleges, Mr. Smithman has not obeyed the requirements of the act of assembly of 1878, which has been somewhat read and discussed in your hearing. . . . . .

Charge of Court below.

In this case, it is conceded, that Mr. Smithman, the defendant here, was in 1887 and 1888, during the time that is covered by the question in controversy, actually transporting oil by pipe line. It is alleged, on his part, that he was the owner of that pipe line, and that he was the owner of all the oil which he transported through or by means of it. If that be true, gentlemen, their being no evidence in this case that he was a common carrier, that he was obliged by reason of any undertaking between him and the government, the state, or by reason of any franchises which he held from the state in any way, to transport or convey through his pipe line any oil that was offered for that purpose by any other citizen of the commonwealth, . . . . —if it be true, that this oil that he did transport through this line was his own oil, not the property of another when it was so transported, then this act of assembly was not intended to apply to him.

While the language of it, that it is intended to apply " to companies, associations, and persons engaged in the storage or transportation by pipe lines of crude or refined petroleum," would, technically speaking, include him, yet in the same application of the language it would include the well owner, a producer who had a well, and who through pipes got the oil from that well, or through pipes ran it from his well to a tank that he himself owned, and there stored it for himself. If the application that is insisted on here by plaintiff would require, as it would, that he should post the statements provided for in the fifth section of this act, then it would, on the same construction, require a producer who had a tank where he pretended to store, even for a time, oil from his well, to make out the same sort of a statement as to the amount of oil that he stored in his tank, or that he run through any line of pipe to such tank.

This is a construction of this act which I am satisfied was not within the intent of the legislature. It was intended to apply to all those public corporations who have laid their lines by reason of franchises, and by means of franchises that they have obtained from the state, as public corporations. It was intended to apply to all private individuals, such as this defendant is here, who would undertake to transport the oil of others for those others, or to store that oil of others for such others, in any tanks or receptacles that he may have for any such purpose ; but it

was not intended to apply to an individual who operated for his own exclusive use, like a producer, the owner of an oil well, or like a refiner, who stored his oil in his tanks for his own immediate use at his works. It was not intended to apply to any such individuals; nor to such a person as the defendant here claims that he was, operating this line, so far as it was operated, for his own use, and running through it his own oil.

That being determined, it leaves the contention in this case to just this one question: Was the oil and all the oil which this defendant transported, (that is, changed the place of the location of, thrown by means of this pipe line,) his own oil, or was it when it was so transported, or when the place of its location was changed by means of this pipe line, the oil of other people, or was any of it the oil of other people? That is really the question. That is the question, gentlemen, that has been argued to you in the argument by the counsel, and it is the question which I now submit to you to determine as a fact in this case. . . . . .

The act, in the ninth section, provides that " any corporation, association, company, person or persons, engaged in the business of transporting by pipe lines, or storing petroleum crude or refined, and each and every officer or agent of such association, corporation, company, person or persons, who shall neglect or refuse to make the report and statements required by the fifth section of this act, within the time and in the manner directed by said section, shall forfeit and pay the sum of one thousand dollars, and in addition thereto the sum of five hundred dollars for each day after the tenth day of the month, that the report or statement required by said section fifth shall remain unposted as therein directed."

The plaintiff, by his statement of claim in this case, . . . . . is asking here to recover five thousand dollars for the failure to put up the statements on or before the tenth of each of the several five months mentioned, and in addition to that the sum of five hundred dollars each day for the failure to put those statements up. . . . . . His entire claim, as made in the case, is eighty thousand five hundred dollars. If the facts be as alleged, he would be entitled to recover in this case the sum of seventy-eight thousand five hundred dollars.

Now, that brings us just to the question that I have before

mentioned : Whose oil was this ? Was it the oil of the defend-
ant that passed through this line ? The plaintiff has offered
evidence of some tickets that were given to the producers at
the wells, at the time that the defendant's gauger gauged the
tanks and the oil was run out of them ; and those tickets have
been offered for the purpose, as I understand it, of showing
that it was a recognition that the defendant had received that
amount of oil from the producer as the producer's oil. The
plaintiff has also offered some monthly statements, and proved
the manner of the business as it was done by the defendant here,
and those monthly statements with balances upon them, repre-
senting oil as is alleged, (you will have some of them with
you,) are claimed to be evidence that the defendant recognized
that this oil was the oil of the parties named in such state-
ments ; and has also offered evidence of the manner in which
the defendant kept his books, showing balances due to the
sundry parties whose oil had been run into the line, as evidence
that this oil, when those balances were struck, was the oil of
the several parties named in the respective accounts. All of
those papers have been received, and some of them, at least,
are evidence of what the plaintiff contends for in this case.
As to the particular ticket that was delivered to the producer
or controller of the oil at the time the oil was gauged and run,
it is not very strong evidence that that oil was taken and ac-
cepted as the oil of the producer after it was received by the
defendant, or into his pipe line. . . . . But the plaintiff goes
further, and he shows by evidence and by statements, some of
which have been presented to the jury, that habitually each
month he sent out statements to the several producers, which
showed there was a balance due, a balance of oil in his hands
of theirs, showing that an account had been kept in their name
between them and him,—and when I say that, I mean each
one of them and him,—in which it appeared that there was oil
due to them respectively, and that the books were kept in the
same manner.

Those statements and those books so kept, if you believe
they were made, and sent, and kept, as is claimed by the plaint-
iff, are evidence, unless explained in some way, that the defend-
ant was recognizing that he had the oil of those several
producers in his possession. They are offered by the plaintiff

for the purpose of proving that fact. The defendant claims that they are just as consistent with his view of the case, which is, that when he received and took into possession this oil, he took it as his own oil under a contract,—in some cases express and in others implied, as he claims, by the course of the business that he was doing, that it was to be his own oil; and that it was to be paid for at any time when the producer should demand payment, and at the price that oil would be when the producer should so demand payment.

Now, it was competent for the parties to make a bargain of that character. The defendant and the several producers with whom he did business might make a bargain in which they would agree that he should take their oil; that they would sell it to him; that he should receive it as his own, and that the price of it he should pay to them should be determined at what oil was worth at its market price at the time when they would require their money. They might do that. If they did do it, then the oil received under any such arrangement by the defendant, would be his oil. . . . .

Gentlemen, you may take this case. Determine the question, as I have already said, whether this oil was the defendant's or not. If it was the defendant's oil, then find a verdict for the defendant. If it was the producer's oil, and if you believe from the evidence, which is not contradicted in this case particularly, that he was operating this line from November, or in October indeed, 1887, up until the time this suit was brought in April, 1888, then you may find a verdict in favor of the plaintiff, as I have already stated, for seventy-eight thousand five hundred dollars. If you do not believe that the oil belonged to the producers, but belonged to the defendant himself, then find a verdict for the defendant.

The plaintiff requests the court to charge:

1. If the jury find that the defendant was engaged in the business of transporting by pipe line or pipe lines, crude petroleum, although he may have been engaged in other business at the same time, he was required to make, sign and post, or cause to be made, signed and posted in his principal business office, on or before the tenth day of each month, a plainly written or printed statement, showing how much oil was in his custody at the close of the previous month; where the same was held

Charge of Court below.

or located; how much petroleum was received during the previous month; how much petroleum was delivered during the previous month; how much petroleum he was liable for the delivery of or custody of to others at the close of the previous month; and how much liability was represented by the outstanding receipts, certificates or vouchers; and how much was represented by credit balances.

Answer: This point is affirmed; it being meant and understood that the crude petroleum, or some of it, which he was engaged in transporting, was, at the time he so transported it, owned by some person or persons other than the defendant himself.[12]

2. If the jury find that the defendant owned or controlled a pipe line, and used it for transporting crude petroleum from wells of others to Oil City, and for such transportation received compensation, this constitutes the business of transporting oil by pipe lines, within the meaning and intendment of the act of assembly in such case made and provided.

Answer: This point is affirmed, if the jury further find that the crude petroleum he so transported, or some of it, was at the time he so transported it the property of others than himself. If it was all his own property when he transported it, then he was not engaged in the business of transporting oil by pipe lines, within the meaning and intendment of the act of assembly referred to.[13]

4. If the jury find that the defendant transported by pipe lines oil from wells owned by others to his tanks in Oil City, and the oil thus run was credited to the owners respectively thereof, whether this was shown by certificates, vouchers, credit balances, or otherwise, and the defendant charged or collected pay for such transportation, these constitute the business of transporting petroleum by pipe lines.

Answer: This point is refused, because there is no evidence that the defendant, in any instance or case, charged or collected from any person pay for such transportation. If that part of the point be omitted, then the point is answered by the answer to the second point.[14]

5. If the jury find the books of the defendant showed the quantity of oil transported by pipe line of the defendant, from different wells owned by his patrons, and that instead of issuing

Charge of Court below.

certificates for such oil, he credited its owners therewith, and when they sold to him, or afterwards, they receipted him for the amount of oil so sold, or charged their account with the same, and he received compensation for such transportation, this constitutes the business of transporting oil by pipe lines.

Answer: The court refuses to charge as requested in this point, because, though the jury do find that the books of the defendant showed the facts as they are stated in the point to be, that evidence is not conclusive that the defendant was engaged in the business of transporting oil by pipe lines, within the meaning of the act of assembly under which this suit was brought. It may be that the evidence mentioned as shown by the books, has been explained by other evidence in the case, so as to make it consistent with what the defendant claims is the truth in this case. It is for the jury to say how this is, under the instructions given you.[15]

6. If the jury find that the defendant bought oil from the producers from time to time, and transported his oil from the wells to his tanks in Oil City, by pipe line, for the purpose of selling said oil, and received compensation for such transportation, this made him a transporter of oil, and he was engaged in the business of transporting oil by pipe lines.

Answer: This point is refused. If it was his own oil which he transported, as is assumed in the point, then there was no person to pay him for transporting it, and no way by which he could receive compensation, except in the increased price and value of the oil at the point to which he transported it. And whether the price or value was so increased, is a matter of no importance to any one but himself.[16]

7. If the jury find the facts set out in paragraph No. 5, and the defendant's books showed credit balances, as they are called, no matter whether the owners of such oil considered it theirs or his, from and after the time it left their possession and he entered it into his pipe line, this is, within the meaning of the law, constituting the defendant a transporter of oil, and made it his duty to post the statement provided for.

Answer: This point is refused.[17]

8. The method of conducting the business, whether by the issue of certificates, or by books showing the transaction, is immaterial; and if the jury find that the defendant transported

Charge of Court below.

oil by means of a pipe line from the oil wells where it was produced, and the oil thus produced belonged to others than the defendant, to his tanks in Oil City, this makes him a transporter of oil within the terms of the law, and he was bound to make the monthly statements according to the act of assembly.

Answer: This point is affirmed.[18]

8½. The monthly statements or credit balances in evidence, show prima facie that the defendant was not at such times the owner of such oil, but they do show prima facie that the persons designated therein were its owners.

Answer: This point is affirmed. That is to say, the credit balances are evidence that the oil mentioned in them was owned by the persons to whom such credits were given; and if this evidence is not so explained by other evidence in the case as to satisfy the jury that it should not be so understood, the jury may conclude from it that the oil was the property of such persons at the time such credit balances were entered.[19]

9. It is not the purchase of oil by the defendant, nor his refusal to purchase, that constitutes him a transporter of oil by pipe line; and if the jury find that he had a pipe line connected with many wells, owned by others at a distance from the storage tanks, and that he conveyed this oil through his pipe lines, for a compensation, to his tanks, this was transporting petroleum by pipe lines within the act of assembly, no matter who may have subsequently bought oil thus run by him.

Answer: This point is affirmed, if the jury find that at the time the oil was conveyed through defendant's pipe line, it was the property of others and not his own property.[20]

9½. If the jury find that the defendant sought and secured the patronage of producers, and he transported oil as a business, although he may have been engaged in another business at the same time, he is a transporter of oil within the meaning and intendment of the law, whether such producers paid pipeage or not.

Answer: This point is in substance a repetition of the first point, and it is answered in the answer to that point.[21]

9¾. That it is immaterial who owned the oil, if in fact the defendant was engaged in the business of transporting crude oil by means of a pipe line.

Answer: This point is refused. If the defendant himself

Charge of Court below.

was the owner of all the oil which he transported, and he transported it only from the place where it was delivered to him and where it was when he became the owner of it, then he is not liable in this case.[22]

10. If the jury find that the defendant was engaged in the business of transporting petroleum by pipe lines, and that he did not make and post the statements required by law, then the verdict of the jury should be in favor of the plaintiff and against the defendant, found in a round sum, for one thousand dollars, and in addition thereto the sum of five hundred dollars, for each day after the tenth of the month that the required statement remained unposted during the time he conducted the business before this suit was brought.

Answer: This point is affirmed; the business of transporting oil by pipe line being understood and taken to mean the business of transporting petroleum which, when it was so transported, was the property of others than the defendant.[23]

13. That in this case the jury is the judge of both the law and the fact.

Answer: This point is refused. It is the duty of the court to inform the jury what the law applicable to the case is; and it is the duty of the jury to assume that the court states the law correctly, and to apply the facts to the law as it is given by the court.[24]

The defendant's counsel request the court to charge the jury on the following points:

2. The object of the pipe-line act of May 22, 1878, is to protect the owners of petroleum entrusted to that class of bailees who transport and store petroleum by means of pipe lines and tanks, and also to protect the public who may deal in or receive such evidence of bailment as may be issued by such bailees; and it has no application to such persons as use pipe lines only for the transportation of petroleum bought and owned by them, and as an incident to their business of buying and selling petroleum.

Answer: This point is affirmed.[25]

3. A contract of sale and purchase may be implied from a uniform course of dealing between parties; as, for example, where one party has, from time to time during a considerable period, delivered goods or chattels to another who held himself

Arguments.

out as a purchaser of such goods, and during the same period, the party so delivering the goods, has from time to time, called and received payment for the goods at the market price at the time of payment, without any express agreement or negotiations at either the time of delivery or the time of payment. The law presumes .that there was a contract for the sale and purchase of the goods, and the title passes at the moment of delivery.

Answer : This point is affirmed.[26]

4. Unless the jury find beyond a reasonable doubt that there was a contract, either expressed or implied, between Smithman and the producers who delivered their oil to him, that he should return the oil to them or to their order, the verdict should be for the defendant.

Answer : Unless the jury find the facts to be as stated in this point, your verdict should be for the defendant. I decline to instruct you, that you must find that these facts existed beyond a reasonable doubt, but you must be satisfied of their existence by clear, satisfactory and convincing evidence ; otherwise, your verdict should be for the defendant.[27.]

—The jury returned a verdict for the defendant. Judgment having been entered, the plaintiff took this appeal, assigning for error, inter alia :

1. The refusal of plaintiff's motion to amend.[1]

2, 3. The sustaining of defendant's objections.[2][3]

5, 6. The refusal of plaintiff's offers.[5][6]

7. The admission of defendant's offer.[7]

12–24. The answers to plaintiff's points.[12 to 24]

25–27. The answers to defendant's points.[25 to 27]

*Mr. John M. Thompson* (with him *Mr. Charles McCandless, Mr. Isaac Ash,* and *Mr. P. M. Speer,* for the appellant :

1. The court below seemed to think that, as the plaintiff's declaration had omitted for a period of more than one year, to charge the defendant as a storer of oil, the application to amend was barred by the limitation contained in the act under which the suit was brought. There is no law requiring the plaintiff to file his declaration in any case within any fixed period after bringing his suit, and therefore there is nothing to prevent his enlarging it by way of amendment at any time

before trial.   The amendment proposed would have done the defendant no injustice, nor would it have introduced a new cause of action ; but it was important, in order that the whole case of the plaintiff might be fairly presented.   The case is wholly unlike First N. Bank v. Shoemaker, 117 Pa. 94.

2. It certainly is not believed by the bar generally that, in a civil action to enforce the payment of a mere pecuniary penalty, the defendant is exempt from testifying on call of the plaintiff, by any constitutional or legislative provision.   He pleads to no criminal charge and runs no risk of criminal punishment, in such a case as this.   The court, therefore, erred in the rulings complained of in our second and third specifications : Commonwealth v. Bell, 145 Pa. 374 ; Logan v. Railroad Co., 132 Pa. 403.   If, however, the court was right in this respect, then our ninth point, which was put in view of and in line with the opinion expressed by the court, should have been affirmed.   While refusing us the right to show that defendant's pipe line was operated precisely like those of pipe-line companies admittedly engaged in the business of transporting oil, the court permitted the defendant to show how such companies conducted their business.   The National Transit certificate, admitted for the defendant, had no tendency to contradict any testimony received for the plaintiff.

3. The object of the act of May 22, 1878, P. L. 104, seems to be two-fold : (a) to prevent the issue of certificates, except for oil actually on hand ; and (b) to require the real amount of oil in store or in transit to be disclosed for the information of the public, so that some intelligent estimate of the value of this commodity may be made.   In this view, it is just as important that the public should know where private oil is, and its quantity, as to know the amount of oil in public pipe lines. There was, however, sufficient evidence of the fact that the defendant actually transported oil for a compensation ; and our points based on this view should have been affirmed, it appearing that he conducted his business like that of other pipe-line companies, and received his compensation for transportation in the same manner, to wit, through the payment of pipeage by the ultimate purchaser or consumer of the oil.

*Mr. C. Heydrick* (with him *Mr. W. D. Brandon, Mr. D. B. Kurtz* and *Mr. Carl I. Heydrick*), for the appellee :

1. In the light of the conditions existing at the date of the act of May 22, 1878, and creating the occasion for its passage, and of the provisions which it contains, its evident purpose was the regulation of companies and persons doing business as bailees for transportation or storage.   It was not intended to apply to the transportation of a man's oil by himself; and it may well be doubted whether the legislature would have power to interfere in such a manner with private business, in which the public could have no possible interest.   The act is similar to the warehouse act of September 24, 1866, P. L. [1867] 1363; and our case is similar in its main features to Bucher v. Commonwealth, 103 Pa. 528.

2. Being an action for a penalty, this is a criminal case within the fifth amendment to the constitution of the United States, and §§ 8, 9, article I., constitution of Pennsylvania; and therefore, the defendant could not be compelled to produce his books for use as evidence against himself: Boyd v. United States, 116 U. S. 616; Moelling v. Coal & Nav. Co., 9 Phila. 223; 1 Greenl. Ev., § 453; United States v. Saline Bank, 1 Pet. 100; Bank of United States v. Biddle, 2 Pars. 33; Logan v. Railroad Co., 132 Pa. 403; Morgan v. Watson, 2 Wh. 10. It clearly follows that plaintiff's counsel had no right to comment on the refusal to produce his books, or ask the jury to draw any inference therefrom: Chaffee v. United States, 18 Wall. 516.

3. Although the act of March 21, 1806, 4 Sm. L. 329, as to amendments applies to penal, as well as to civil actions, it is confined to amendments at common law, consisting of matters of form merely: D. & S. Canal Co. v. Parker, 4 Y. 363; Griffith v. Eshelman, 4 W. 55; Newlin v. Palmer, 11 S. & R. 98; Ebersoll v. Krug, 5 Binn. 53; Shock v. McChesney, 4 Y. 507; Cassell v. Cooke, 8 S. & R. 268.   A new cause of action cannot be introduced by amendment, especially when barred by the statute of limitations: Rodrigue v. Curcier, 15 S. & R. 81; Fairchild v. Dennison, 4 W. 258; Diehl v. McGlue, 2 R. 337; Steffy v. Carpenter, 37 Pa. 41; Knapp v. Hartung, 73 Pa. 290; Smith v. Bellows, 77 Pa. 441; Smith v. Smith, 45 Pa. 403; Wood v. Anderson, 25 Pa. 407; Wright v. Hart, 44 Pa. 454; Root v. O'Neil, 24 Pa. 326; McNair v. Compton, 35 Pa. 23; Gardner v. Post, 43 Pa. 19; Beates v. Retallick, 23 Pa.

288; Schoneman v. Fegley, 7 Pa. 433; Trego v. Lewis, 58 Pa. 463; Tyrrill v. Lamb, 96 Pa. 464; First N. Bank v. Shoemaker, 117 Pa. 94; Kille v. Ege, 82 Pa. 110; Leeds v. Lockwood, 84 Pa. 70; Kaul v. Lawrence, 73 Pa. 410; Miller v. Bealer, 100 Pa. 583; Duffey v. Houtz, 105 Pa. 96.

4. That the amendment proposed by the plaintiff in this case would have introduced a new cause of action, after the statute had barred it, is apparent when the provisions of the act are considered. It applies to persons engaged in the business of transporting, or in the business of storing petroleum. If one were sued as a transporter, and the proof was that he never transported any petroleum, there could be no recovery, notwithstanding he may have been a storer and liable as such. And the admission in evidence of the certificate issued by the National Transit Company was justified. Such certificates had been referred to by witnesses for the plaintiff, as subject by general usage to a transportation charge of twenty cents per barrel, and it was sought to create the impression that the gauger's tickets issued by the defendant were of the same nature. It was proper, then, to show the jury what the nature of the certificates, thus referred to, was.

OPINION, MR. JUSTICE WILLIAMS:

The transportation and storage of petroleum are regulated by the act of May 22, 1878. Among other provisions to be found in it is one that requires every corporation, association, person, or persons engaged in the business of transporting crude or refined petroleum by means of pipe lines, or storing it in tanks, to make and post conspicuously in the principal business office of such corporation, association, person, or persons a monthly statement showing the quantity of crude and refined petroleum on hand at the beginning and at the close of the previous month, and where the same was stored or kept. The statement must also show how much petroleum was received, and how much was delivered to purchasers and owners, during the month; also, how much of the whole amount was held for other corporations, associations, or persons, and how much of the amount so held was represented by certificates, accepted orders, or other form of outstanding vouchers. For a failure to make out and post such statement of each month's opera-

tions on or before the tenth day of the following month, the act provides a penalty of one thousand dollars, with an additional five hundred dollars for each day after the tenth that the neglect shall continue.

Smithman owned or was in possession of a pipe line leading from storage tanks in or near Oil City to a number of wells some miles away, and having connection with wells along the route. He was, as the jury have found, engaged in the business of buying and selling oil on his own account, using the pipe line to collect his oil in the storage tanks from which his sales were made. Boyle was the publisher of a newspaper, and as such interested in the collection and publication of statistics relating to the oil business. Assuming that Smithman was engaged in transporting and storing oil for producers along his line, Boyle called upon him for a statement of his business, made out under the act of 1878. He declined to make a statement of his business, and denied that he was within the provisions of the act. This demand was repeated in successive months, until the penalties for not posting the statements in his office, and the additional daily penalties for the delay, would aggregate nearly eighty thousand dollars. This action was then brought.

The defence was that the act of 1878 was applicable to persons and corporations doing business as carriers, and to those providing storage for the public; and that its object was to protect the public, by compelling a correct showing of the business done, and the stocks in store. It was also contended that the defendant was not a carrier, and provided no storage for the public, but was a private purchaser, collecting and storing his own oil, and selling it as opportunity offered. Not holding oil for others, he issued no certificates or accepted orders, but his purchases of oil were entered upon his books; the seller being credited with the amount delivered, and charged with the money paid, as in the purchase of any other commodity. For these reasons, it was urged that the defendant was under no duty to make the statement called for, and, if made, it could do no more than disclose his own private business, in which the public had no interest. The case turned, therefore, on the character of the defendant's business. Whether he was in fact a purchaser of all the oil he transported, or was a com-

mon carrier serving the public, was a question of fact, for the jury to determine. They have found this question in his favor, and under instructions which are not open to any just complaint. If the plaintiff was not injured by the rulings of the court now assigned for error, the question must be treated as finally settled by the verdict.

The first of these rulings was the refusal of the learned judge to permit the plaintiff to amend his declaration, at the trial, so as to include therein a charge that the defendant provided storage for the public, as well as transportation. As the jury have found that his business was that of a private purchaser, and that he was not serving the public, this refusal ceases to have any significance, and it is unnecessary to enter upon a consideration of it.

The second assignment is to the refusal of the court to compel the defendant to produce his books in court, so that they might be used as evidence against him on the trial. The act of 1878 is highly penal. This action is in form a penal action. Its object is to punish the defendant for disobeying the direction of the statute, by imposing penalties amounting to about eighty thousand dollars. The defendant could not be compelled to testify against himself as a witness, and for the same reason he cannot be compelled to aid in his own conviction by the production of his books and papers. He had an unquestionable right to insist upon his privilege, and the court was bound to protect him in the enjoyment of it: Logan v. Railroad Co., 132 Pa. 403.

The answer to another of the assignments follows as a matter of course from what has been said. If the defendant was exercising a clear, legal right in refusing to produce his books, it was the duty of the court to deny to the counsel for the plaintiff the leave they asked to comment upon his refusal in their addresses to the jury. They asked to be allowed " to refer to, and draw any legitimate conclusion that may be drawn from the fact that the defendant refuses to produce his books." The court held that they had no right to refer to the defendant's refusal " as evidence in any way in favor of the plaintiff or against the defendant." This was the least the court could say. The privilege of the defendant to decline to furnish evidence against himself, would be of very little value if the fact that he

Opinion of the Court.

claimed its protection could be made the basis of an argument to establish his guilt. To extend to a defendant the formal protection of his privilege, and then allow the fact that he had claimed it, to be used as affording a presumption against him, would be a sort of mockery of which the law is not guilty. It not infrequently happens, on the trial of causes, that a party offers evidence that is objected to as irrelevant, and that is excluded for that reason; but I am not aware that any court has been afterwards asked to allow the counsel by whom the evidence was offered, " to refer to, and draw any legitimate conclusion that may be drawn from the fact " that the evidence offered was objected to by the other side. A party has a right to object to the form of the question put by his adversary, or to its subject matter. He has a right to insist on his privilege, whether his confidential adviser is called to the stand against him, or he is asked to testify against himself, in a criminal case or a penal action. When the court sustains his objection or his claim of privilege, that is, as to that point, a judgment in his favor. The evidence is then excluded, or the privilege extended, as the act of the court; and all the jury can properly know about it is that an offer was made in their hearing which was rejected, and which therefore is, for the purposes of the trial, as though it had not been made.

The remaining assignments do not require a separate consideration, and are not sustained. The certificates issued by the National Transit Company made no part of the plaintiff's case. What he had to do was, not to show how other transporters conducted their business, but that the defendant was engaged in the business of transportation as a carrier for the public. It was competent, however, for the defendant, when he came to reply to the case made against him, to show that his business was that of a private purchaser, both in its character and its methods. In this connection, having shown his method of keeping accounts with those from whom he made purchases, it was competent for him to show the methods adopted by those who were known to be common carriers, that the jury might be the better able to determine the real character of his business.

The judgment is affirmed.