## UNTERMEYER v. FREUND.

(Circuit Court of Appeals, Second Circuit. October 17, 1893.)

1. DESIGN PATENTS—ANTICIPATION—EVIDENCE BASED ON RECOLLECTION.
Anticipation of a design patent is not made out by the evidence of workmen testifying after several years to the appearance of a few de-signs made by them, when it is shown that their recollection is at fault as to the only one of these designs which is produced, and when they are contradicted by other witnesses, having equal facilities for knowledge.

2. SAME—ORAL TESTIMONY AS TO DATES.
Anticipation of a patent is not made out by indefinite and contradictory testimony, entirely from recollection and after several years, as to the date at which a like device was produced.

3. SAME—INVENTION — TRANSFER AND ADAPTATION OF OLD DESIGNS — WATCH CASES.
While the mere transfer of an old form existing upon something else to a watch case is not patentable invention, yet a patent for a watch-case design is not invalidated by the pre-existence upon something else of all the elements of the design, but arranged and combined in a different manner, resulting in a materially different appearance.

4. SAME—VALIDITY OF PATENT.
Letters patent No. 15,121, issued July 1, 1884, to Henry Untermeyer, for a design for watch cases, are valid.

5. SAME—INFRINGEMENT—PENALTIES—EQUITY JURISDICTION — CONSTITUTIONAL LAW.

The act of February 4, 1887, relating to design patents, is not unconstitutional in that it imposes a penalty for infringement, and authorizes the enforcement thereof by a court of equity in an injunction suit.

6. SAME—MEASURE OF DAMAGES.

The act of February 4, 1887, enlarged the remedy for the infringement of a design patent by giving as damages the entire net profits made on the article to which the infringing design is applied, instead of requiring an apportionment of the profits attributable merely to the design. 50 Fed. Rep. 77, affirmed.

7. SAME—ACT FEB. 4, 1887—PENDING SUITS.

The measure of damages thus prescribed was applicable to pending suits, as to infringements occurring after the statute went into effect. 50 Fed. Rep. 77, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Equity. Bill by Henry Untermeyer against Max Freund for infringement of a design patent. The circuit court rendered a decree for complainant, (50 Fed. Rep. 77,) and defendant appeals. Affirmed.

Frederic H. Betts, for appellant.

Rowland Cox, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The bill in equity in this case was brought in the circuit court for the southern district of New York, against Max Freund and Adolph S. Freund, to restrain the alleged infringement of design letters patent No. 15,121, applied for May 8, 1884, dated July 1, 1884, to Henry Untermeyer, for a design for watch cases. The circuit court entered an interlocutory decree ordering an injunction against the defendants, and an accounting, and upon the return of the master's report overruled the defendants' exceptions thereto, confirmed the report, and entered a final decree against Max Freund, the surviving defendant, for the sum of $1,139.02, and the master's fees and the costs. This appeal is by the surviving defendant from each decree.

From the specification it appears that the design consists of a conventional star, in which any ornament may be set, and which is placed upon a ground of leaves which is larger than the star, and of corresponding shape. Between the points or leaves of the larger star are projections. The whole is in relief. The claims are three in number. The third claim is as follows:

"(3) A design for watch cases, consisting of the star, A, containing the ornament, D, the larger star, B, representing leaves, and having between its points the ornamental projections, C, and the star, A, occupying the center of the star, B, all being in relief, substantially as shown and described."

The second claims omits the ornament, D, and the first claim omits the ornament and the ornamental projections.

The defenses are want of novelty, prior use for two years before the date of the application, and lack of patentable invention, in view of the state of the art when the improvement was made. Infringement is denied, in view of the limited construction of the patent which is thought to be rendered necessary by the prior state of the art.

The major part of the oral testimony upon the subject of anticipation related to the work which was done for Keller & Untermeyer at the shop of Ball, Parker & Waters before July 1, 1882. The patentee was and is a member of the firm of Keller & Untermeyer, jewelers. They employed, for some years prior to July 1, 1882, the firm of Ball, Parker & Waters, watch-case manufacturers, to make and ornament watch cases. Parker was the manager of the factory. Benfield was, until July 1, 1882, the foreman of the engraving department, when he left this firm, established one of his own, under the name of Benfield & Tissot, and thereafter obtained all of the business of Keller & Untermeyer. The theory of the defendants is that prior to July 1, 1882, in the Parker shop, watch cases were ornamented, by the workmen of Benfield, for Keller & Untermeyer, or for others, with the design which was subsequently placed on infringing watch cases, and which is substantially that of the Untermeyer patent. Parker and six workmen testify to this alleged state of facts. They are contradicted by Untermeyer, Benfield, and two workmen. One very significant fact appeared in the testimony of Parker. He testified with clearness and positiveness in accordance with the foregoing theory, and, among other things, was positive that watches from Nos. 13,193 to 13,198, inclusive, except 13,195, which were made for Keller & Untermeyer, were substantially identical in appearance with the design of the Untermeyer patent, and with the infringing watch cases. No. 13,193 was sold to Keller & Untermeyer on March 8, 1893, was traced to the purchaser from them, and was produced by the complainant. It neither has the design of the patent, nor such a resemblance to it that a purchaser would mistake one for the other. It has a conventional star placed over an engraved starlike figure, not the complainant's leaf star, and has no other features of the patented design except the ornament in the conventional star. This proof of the defective memory on the part of Parker, who is apparently an honest witness, greatly impairs the weight that is to be given to his testimony and that of his associates, who testify from recollection, unaided by written memoranda. Untermeyer's theory, in brief, is that about the beginning of 1882 he wanted a design for a watch case in which a diamond should be an attractive feature, and started with the idea of a single raised star carrying a diamond in the center, with a circle of engraved stars in the outer portion of the case. The next step was to raise the outer circle of stars. The next attempt was the design shown in No. 13,193. Next followed, in May or June, 1883, the patented design, which was produced at the shop of Benfield & Tissot, and the imperfect conception shown in No. 13,-193 was abandoned. These successive steps were taken for the purpose of overcoming faults in the earlier design which became manifest as they were placed upon watch cases. An examination of the whole testimony results in a great distrust of the accuracy of the memory of Parker and his workmen, and in the conclusion that Untermeyer's history of the development of the patented design is substantially correct.

The alleged anticipation by the manufacture of watch cases, like

the one known as the "Muhr Watch Case, No. 22,056," is not satisfactorily established. It is substantially conceded that this case was ornamented by the Willamin Watch-Case Company, and that the work was charged in a bill of that company, March 18, 1884. It contained the patented design. The patent was applied for May 8, 1884. In this state of facts it became necessary for the patentee to establish to the satisfaction of the court that his invention preceded the time when the Muhr design was shown to have been first made. Plow Works v. Starling, 140 U. S. 184, 11 Sup. Ct. Rep. 803; Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 11 Sup. Ct. Rep. 846. Simon Muhr, his brother, and their salesman, since September, 1879, also attempted to show that similar cases were also ornamented by the Willamin Company, about a year before, but neither one states the time with definiteness. The salesman says that cases with the same design were in Muhr & Son's stock two or three months—it may have been five months—before March, 1884, and that it was either in 1883 or in 1884. In reply to a question in regard to this date, Jacob Muhr is "almost positive that it was very nearly a year" before March, 1884. Simon Muhr, who says that his brother can give better dates than he can, cannot tell in which month of the spring of 1885 the Willamin Company ornamented cases with a design like that upon No. 22,056. Neither witness has any memoranda, but relies upon his memory. The existence of the Muhr design cannot be considered as established by this testimony at any time prior to that stated by the salesman. The first order by Keller & Untermeyer for an ornamented case like the patented design was undoubtedly given on July 25, 1883. The testimony of the defendants is altogether too vague to justify the conclusion that the Willamin Watch Company ornamented watches in the same way before that date.

The other testimony in regard to designs which preceded the Untermeyer invention was offered to prove direct anticipation, and also to show the state of the art at the date of the invention, and thence to deduce the conclusion that it contained nothing patentable. This testimony relates to badges, watch-case designs, a watch, and 30 tracings from drawings in the Astor Library. Much reliance was placed by the defendants upon four of these drawings, Nos. 8, 20, 26, and 29, which the respective experts united in regarding as the nearest resemblance of the 30 to the patented design. No. 8 is apparently of metal, and applied to a balcony or veranda. No. 20 is a decoration on the panel of a door. No. 26 is a piece of jewelry, and is a star of leaves with an ornamental center superimposed upon a star of leaves. No. 29 is a plaster ornament for a ceiling. Neither of them contained the conventional central star of the design. In reply to the question as to the probability of these designs, if placed upon watch cases, being mistaken by an ordinary purchaser for the Untermeyer patent, the defendants' expert simply said that, if placed upon a watch case in relief and chased, they would, to the ordinary purchaser, strongly resemble the Untermeyer design. The books which contained these drawings did not describe them.[1]

Neither the appearance of any one of this general class of exhibits, nor the oral testimony of the defendants' witnesses, shows that any one of this class can be considered an anticipation of the patented design. All of them may be disregarded upon the mere question of novelty. They are important upon the question of patentable invention. If the patented design consisted in a transfer of an old form which had existed upon something else to a watch case, or in the mere adaptation by imitation of a pre-existing form to a watch case, it would not have been an invention. If the adaptation "is more than the exercise of the imitative faculty, and the result is in effect a new creation, the design may be patentable." Smith v. Saddle Co., 148 U. S. 674, 13° Sup. Ct. Rep. 768. In this case the patented design was not a copy of an old form, or an adaptation of the same pre-existing form to a watch case. The elements of the patented design, viz. conventional stars, with or without ornaments, and stars of leaves and projections of various kinds between the leaf points, existed, but arranged and combined in a different manner, and producing a resulting appearance and effect which differed materially from the patented design. Its combination was peculiar to itself, and had a characteristic grace of its own. While other combinations were graceful, and were effective for the purpose for which they were designed, this combination, which seems adapted to ornament a small surface, produced its own effect.

The remaining defenses relate to the statute of February 4, 1887, in regard to design patents. The first section, after providing that thereafter, during the term of letters patent for a design, the unauthorized use of such design was unlawful, provided as follows:

"Any person violating the provisions, or either of them, of this section, shall be liable in the amount of two hundred and fifty dollars; and in case the total profit made by him from the manufacture or sale, as aforesaid, of the article or articles to which the design, or colorable imitation thereof, has been applied, exceeds the sum of two hundred and fifty dollars, he shall be further liable for the excess of such profit over and above the sum of two hundred and fifty dollars. And the full amount of such liability may be recovered by the owner of the letters patent, to his own use, in any circuit court of the United States having jurisdiction of the parties, either by action at law or upon a bill in equity for an injunction to restrain such infringement."

The bill in equity in this case was filed December 30, 1886, and the interlocutory decree was entered January 24, 1889. The master found that between July 1, 1884, and January 24, 1889, the defendants sold and received pay for 275 watch cases bearing the patented design, of which 82 were sold before February 4, 1887, and 193 were sold after that date; that the evidence failed to show what, if any, part of the net profit received by the defendant from the sale before February 4, 1887, or after that date, was due to the patented design, and failed to show that the entire net profit of sales, after February 4, 1887, was due to the patented design. He found that the entire net profit made by the defendants on watches sold after that date was $1,139.02, which was $889.02 in excess of $250; and that nominal profits, or nominal damages, only, could be found upon the sales made before that date. The final decree adjudged that the

defendants pay to the complainant $1,139.02, the master's fees, and costs.

The first position of the defendants is that the act of February 4, 1887, was unconstitutional because it imposes a penalty; that a court of equity has no jurisdiction of penalties, which must be recovered on the law side of a court, and by the verdict of a jury; that the act is of a quasi criminal nature, and trial of the accused by jury is imperative; and that a taking of property is authorized without due process of law. The argument of the defendants requires for its support the truth of three propositions.

The first may be stated in the language of the supreme court in Root v. Railway Co., 105 U. S. 189, 206, that in the federal courts the "distinction of jurisdiction between law and equity is constitutional to the extent to which the seventh amendment forbids any infringement of trial by jury, as fixed by the common law; and the doctrine applies to patent cases as well as others."

Second. That a court of equity, in the exercise of its ordinary powers, does not enforce a penalty or a forfeiture. 2 Story, Eq. Jur. § 1319.

Third. That the legislature cannot, by express provisions of a statute, empower a court of equity, as incidental to its preventive remedy by injunction, to compel the defendant to pay damages in the nature of penalties. The first two propositions are true; the third does not follow as a logical consequence from them, and is not sustained by authority.

The subject of the power of a federal court of equity, under the statute now known as section 4921 of the Revised Statutes, to direct the payment of profits and damages, upon a bill in equity brought during the life of a patent to restrain its infringement, was considered historically, and with great care, in Root v. Railway Co., supra. The supreme court held that "a bill for a naked account of profits and damages against an infringer of a patent cannot be sustained; that such relief ordinarily is incidental to some other equity, the right to enforce which secures to the patentee his standing in court." The argument of the court assumed as undeniable that, when the patentee had secured his standing in a court of equity of the United States, by a bill in which he asked, and was entitled to obtain, the preventive remedy by injunction, the court could properly proceed to afford incidental relief, and assess the damages which the complainant had suffered in excess of the profits which the defendant had made by virtue of the infringement, and even, at its discretion, increase the actual damages. It is not material whether these damages are unliquidated and to be assessed by the court, or whether they are called a "penalty," provided the legislature has expressly empowered the court of equity, in a bill brought within its jurisdiction for preventive remedies, to afford this additional and incidental relief. This subject was considered generally in Stevens v. Gladding, 17 How. 454, (decided at the December term, 1854,) the question in the case being whether the copyright act of 1819, which provided for forfeitures of the infringing copies of a copyrighted book, had conferred upon courts of equity power to enforce forfeit-

ures, or had left them to be enforced at law. The court, speaking by Mr. Justice Curtis, was of opinion that nothing in the act extended "the equity powers of the courts to the adjudication of forfeitures; it being manifestly intended that the jurisdiction therein conferred should be the usual and necessary jurisdiction exercised by the courts of equity for the protection of analogous rights." Judge Curtis had, at the November term, 1854, of the circuit court, in Stevens v. Cady, 2 Curt. 200, considered the same subject of the power of a court of equity over penalties under the copyright statutes, and said: "A court of equity does not enforce forfeitures or penalties, unless expressly directed by statute to·do so;" and reached the same conclusion, in regard to the absence of power conferred by any existing statute, which was confirmed in Stevens v. Gladding. It is difficult to suppose that the supreme court doubted the power of congress to confer this authority upon a court of equity, as incidental to the exercise of its ordinary jurisdiction.

The defendants next insist that, under a proper construction of this statute, all the profits which resulted to the infringer from the sale of the infringing article after February 4, 1887, cannot be allowed, but that his liability extends only to the amount of profits which the complainant can show were due to the use of the patented design. The well-settled doctrine of the supreme court was and is that the profits to be assessed, under section 4921 of the Revised Statutes, in suits in equity for the infringement of a patent, are those only which are properly attributable to the patented feature, and that the evidence of the patentee must "apportion the defendant's profits, and also the patentee's damages, between the patented and unpatented feature." Garretson v. Clark, 111 U. S. 120, 4 Sup. Ct. Rep. 291. If the profits upon the whole article are clearly due to the patented part, which gives to the article its marketable value, they are the measure of recovery. Manufacturing Co. v. Cowing, 105 U. S. 253. In this state of the statutes, applicable to patents for designs as well as to machine patents, the circuit court for the eastern district of Pennsylvania held, in a case for the willful infringement of a design patent for carpets, that where no profits were found to have been made, but the complainant's sales had decreased as the effect of the infringement by the defendant, but the amount of damages could not be ascertained by the master from the evidence, the court was justified in presuming that the infringing carpets displaced in the market the complainant's carpets, and hence that the profits which would have accrued to them upon the quantity of carpets put upon the market is the measure of their damages." Carpet Co. v. Dobson, 10 Fed. Rep. 385. Upon appeal, the supreme court disagreed with the conclusion of the circuit court, and held that the complainant must be required to establish the actual damages or profits by trustworthy legal proof; and, as there was no evidence in the case of the value which the patented designs had contributed to the infringing carpets, the decree must be reversed, and nominal damages, only, should be awarded. Dobson v. Carpet Co., 114 U. S. 439, 5 Sup. Ct. Rep. 945. The statute of 1887 was

passed in consequence of this decision. The manifest .purpose of congress was to enlarge the remedy against infringers of design patents, and to declare that the measure of profits recoverable on account of the infringement should be considered to be the total net profits upon the whole article. A construction which should limit a recovery above $250 to the amount which the complainant could clearly establish to be the value which the design had contributed to the infringing carpets would be at variance, not only with the apparent legislative intent, but with the language of the statute. The rule which congress declared for the computation of profits was the total profit from the manufacture or sale of the article to which the design was applied, as distinguished from the pre-existing rule of the profit which could be proved to be attributable to the design.

The defendants next insist that inasmuch as the bill was filed December 30, 1886, the complainant is not entitled, as to sales which were made after February 4, 1887, to the total profits, in the absence of proof that the entire profits were attributable to the use of the design. Upon an accounting for an infringement commenced before the bill was filed, and continued afterwards, the complainant is entitled to recover the profits derived by the defendant from his infringement to the date of the accounting. "The practice saves a multiplicity of suits, time, and expense." Tatham v. Lowber, 4 Blatchf. 86; Rubber Co. v. Goodyear, 9 Wall. 788; Marsh v. Nichols, Shepard & Co., 128 U. S. 605, 9 Sup. Ct. Rep. 168. This was also the rule in an accounting under a decree of foreclosure. Robinson v. Bland, 2 Burrows, 1086; Holabird v. Burr, 17 Conn. 563. In this case the infringement continued after the bill was filed, and after the act of 1887 went into effect. Under the decree, which sustained the patent, and found an infringement, and directed an accounting, it was the duty of the master to take an account during the entire period of infringement, in conformity with the statutes as they existed at the respective dates when the infringement was committed. The cases of Williams v. Leonard, 9 Blatchf. 476, and Sarven v. Hall, Id. 524, are not applicable. The decision in those cases was based upon the language of section 111 of the act of July 8, 1870, which limited the remedial provisions of the act to suits and proceedings commenced after its passage. Neither is it necessary to consider the rules of equity pleading in regard to amendments relative to circumstances which occur after the filing of the bill, for there was no necessity for an amendment or for a supplemental bill.

The decree of the circuit court is affirmed, with costs.