## PHŒNIX KNITTING WORKS v. HYGIENIC FLEECED UNDERWEAR CO.

(Circuit Court, E. D. Pennsylvania. September 13, 1911.)

### No. 605.

1. PATENTS (§ 28*)—PATENTABILITY OF DESIGN—INVENTION.
      The exercise of the inventive faculty is as essential to the validity of a design patent as to a mechanical patent, and the mere transferring of an old design to a new article does not constitute patentable invention.

      [Ed. Note.—For other cases, see Patents, Cent. Dig. § 33; Dec. Dig. § 28.*]

2. PATENTS (§ 328*)—ANTICIPATION—DESIGN FOR NECK SCARF.
      The Mead design patent, No. 39.347, for a design for a neck scarf, is limited to the serrated edge of the scarf aprons and the herringbone stitch, which produces the same, as shown in the drawings, and as so limited is void for anticipation.

In Equity. Suit by the Phœnix Knitting Works against the Hygienic Fleeced Underwear Company. On final hearing. Decree for defendant.

See, also, 194 Fed. 702; 194 Fed. 696.

F. E. Dennett and Henry N. Paul, for complainant.
Hector T. Fenton, for defendant.

WITMER, District Judge. The complainant owning design patent No. 39,347, for a neck scarf or muffler, issued under date of June 9, 1908, to Joseph Mead of Milwaukee, Wis., and assigned to the plaintiff several days thereafter, sues the defendant, the Hygienic Fleeced Underwear Company, in equity, for alleged infringement, and praying for an accounting and injunction. The answer denies infringement of any exclusive rights validly secured by said patent to the complainant.

The validity of the patent was sustained in a contested case. Phœnix Knitting Works v. Bradley Knitting Company (C. C.) 181 Fed. 163. Following this decision, it appears that injunctions have been secured against other infringers in other districts. Among these suits were several in this court, one of which (Phœnix Knitting Works v. Grushlaw [C. C.] 181 Fed. 166) resulted in a decision which on appeal was affirmed by the Court of Appeals (183 Fed. 222, 105 C. C. A. 484) sustaining the propriety of the issuance of a preliminary injunction.

The patent was also before this court in the present case upon a preliminary injunction motion, and an opinion was rendered by Judge Holland, 194 Fed. 702, finding, so far as concerned the motion, that the defendant's neck scarfs infringed the patent. Since then Judge Killits, sitting at Cleveland, in the Northern district of Ohio, in a well-considered opinion not yet reported, reviewing the history of the litigation on this patent and distinguishing prior decisions rendered, no doubt benefited by an accumulation of researches, in a hotly contested case between the complainants and Nathan J. Rich et al., declared the patent invalid because of appearing anticipation.

Notwithstanding these decisions, their validity or importance as res adjudicata are only pursuasive as they appear based on well-settled principles of law supported by the evidence of the case. "Comity pursuades; it does not command." Mast v. Stover, 177 U. S. 485, 20 Sup. Ct. 708, 44 L. Ed. 856.

This case is now before the court for final hearing, on what may be considered an opinion and remand from the appellate tribunal which leaves the court perfectly free, notwithstanding anything said in prior decisions, to consider the case de novo on evidence then appearing and others cumulative; the appellate court's opinion in the Grushlaw Case concluding:

"Notwithstanding anything that may have been said herein, it should be distinctly understood that it is not intended thereby to express any definite or controlling opinion upon either the question of the validity of the patent or its infringement."

In what, then, consists this new and useful invention or discovery given by the patentee to the public for which he in return claims exclusive right? The alleged invention is entitled in the specification a "design for a neck scarf," and the entire specification consists of the following words:

"Be it known that I, Joseph Mead, a citizen of the United States, residing at Milwaukee, * * * state of Wisconsin, have invented a new, original, and ornamental design for neck scarfs, of which the following is a specification, reference being had to the accompanying drawing, forming a part hereof. The figure is a plain view of a scarf showing my new design. I claim: The ornamental design for a neck scarf, as shown."

It will be observed that this specification contains no description whatever, save by implication from the words "ornamental design" and "as shown"; the alleged novelty is said to be contained in something shown in the drawing, in the nature of an ornamental surface appearance given to a known article of manufacture, known as a neck

scarf. Referring to the drawing to ascertain what this is, we see what is alleged in the specification to be "a plain view of a scarf"; and its characteristic features are obviously not the narrow central neck portion, for that has only to do with function and constitutes no part of a design, but the two similar end portions or breast aprons, and these we see are shown as alternating inclined lines with serrations on each selvage edge, though both the specification and drawing are wholly devoid of any description or even the most remote suggestion that the article is to be knitted material; and, unless this is presumed to be known to those skilled in the art, the patent is bad on its face for lack of disclosure sufficient to produce the "ornamental design," which is "shown" and alleged to be patented thereby.

After a detailed history of the procedure in the Patent Office pertaining to the grant, Judge Killits expressed the conclusion, in which we concur, that:

"The patent, if valid at all, should be construed as within the narrow limits of the drawing only, and that all that is patented, if anything, is the construction of a scalloped longitudinal edge and two transverse series of stitching at angles to each other, each series of stitches being located between opposing scallops," as specified in the original application presented.

The elimination of this detailed verbal specification and the permission to allow the patent to rest upon the drawing alone has been the source of much speculation as to its scope.

The complainant concedes that:

"The public are at liberty to make as many of them (neck scarfs) as they please, provided they refrain from using the characteristic zigzag stitch design including the scalloped edge effect" shown in the patent.

It is furthermore beyond dispute that the former is produced by a knitting stitch known as a full cardigan or herringbone stitch, and that the latter follows as a necessary result of the use of such stitch in knitted garments.

It is obvious therefore that the general shape of Mead's design is not involved, which is furthermore observed from the action of the examiner who failed to pass the application until satisfied that the novelty lay only in the ornamentation of the "aprons" by special arrangements of the stitchings.

This is also admitted by counsel for the patentees in reply to the comment of the examiner, to wit:

"This application has been further considered in connection with the amendment of April 16, 1908, and the claim presented is held to be lacking in invention and novelty in view of what is shown in the patents to Henry Boob, 114,397, May 2, 1871, improvements in knitted fabrics; J. H. Fleisch, 236,570, January 11, 1881, neck scarf; and W. B. Erkstein, 445,137, January 20, 1891, 'neck scarf."

To this criticism counsel for the applicant replied as follows:

"The references cited by the examiner have been carefully considered, and, as understood, fail to show applicant's design for neck scarf.

"Patent to Boob shows a knitted fabric, but the stitching is entirely different from the stitching of the fabric shown in the neck scarf filed as an exhibit with this application.

"Patent to Fleisch. No. 236,570, and patent to Erkstein, No. 445,137, both show neck scarfs, the enlarged ends of which are united by a relatively

194 F.—45

narrow connecting web. Neither of the patents, however, show the enlarged ends of the scarf scalloped, as in applicant's device."

The alleged new design therefore may safely be said to reside in the surface ornamentation shown in the drawing which is claimed to show the use or employment, in the manufacturer's product, of a series of transversely disposed zigzag stitches, called "full cardigan" or "herringbone" stitches, which in alternating collocation necessarily produce a serrated or saw cut appearance on each selvage edge of the scarf apron.

It was well said by Judge Holland, on motion for preliminary injunction, that 10 of the 11 neck scarfs in evidence manufactured by the defendant are very like the plaintiff's design; "that is, the body or attractive feature of which is the herringbone stitch and serrated edge, possessing, however, other ornamental features in addition to these shown in the patent." These are no doubt an infringement of the alleged patent.

That the defense aims at the very root of this patent, arguing that the necessary effect of a series of such alternating stitches, disposed transversely to the length of a scarf, is obvious; but, if not, the United States patent granted to Bickford in 1872 for "improvements in knit fabrics and methods of knittings" clearly shows it. Fabrics knitted according to the Bickford method as described in his patent papers, and offered in the case before us for illustration, show "scalloped longitudinal edges" and "series of transverse stitchings at angles to each other," and it must be kept in mind that Mead does not claim a peculiar stitch, but only the result or appearance.

The proofs also establish a like appearance resulting from a similar method of knitting, employed long before the plaintiff's alleged patent, in the knitting of sweater sleeve blanks shown in the record on page 121, also in the fabric shown on page 117, and in the knit jacket made therefrom and shown on page 119, though in the two latter the stitches are larger and the saw cut effect less marked; but it is characteristic, and the difference is merely one of degree which is not material. The first two only of these prior uses were before the Court of Appeals in the Grushlaw Case, though we think that case went off merely on the question of whether or not the granting of the provisional injunction was an abuse of discretion in the trial judge, and was not in any sense a decision on the merits as stated, notwithstanding its criticism of the sweater sleeve blank, as a mere blank which when finished into a sleeve no longer plainly showed the saw cut edges, though it will not be denied will continue to show the alternating series of herringbone stitches which necessarily produce these edges.

[1] Again, although it appearing that the stitch or method of knitting, anticipating the design, was used in the manufacture of wearing apparel other than neck scarfs or mufflers, we think that it is equally certain that the mere transferring of an old design to a new and analogous use is not patentable design invention.

"The exercise of the inventive or originative faculty is required, and a person cannot be permitted to select an existing form, and simply put it to a new use, any more than he can be permitted to patent the double use of

a machine." Smith v. Saddle Co., 148 U. S. 674, 13 Sup. Ct. 768, 37 L. Ed. 606; Hammond v. Stockton, 70 Fed. 716, 17 C. C. A. 356; Cary v. Neal, 98 Fed. 617, 39 C. C. A. 189; American Co. v. Newgold, 113 Fed. 877, 51 C. C. A. 501.

"The exercise of the inventive faculty is just as essential to the validity of a design patent as it is to that of a patent for a mechanism." Myers v. Sternheim, 97 Fed. 625, 38 C. C. A. 345.

To be patentable it "must be original," and it must be the result of the "inventive," not the "imitative," faculty. Untermeyer v. Freund, 58 Fed. 205, 7 C. C. A. 183.

On this question of "double use" the late Judge Green, of the New Jersey district, in Mfg. Co. v. Harness Co. (C. C.) 45 Fed. 582, stated the principle as follows:

"I think it may be taken as settled that, to sustain a design patent, there must be exhibited in a production of the design an exercise of the inventive or originative faculty. * * * It follows necessarily that the adaptation of old devices, or of old forms or designs, though never so beautiful, to new purposes or ornamentation, however exquisite the result, is not invention. It is not begotten of originality., And so it is forbidden for one to choose an existing design, simply to devote it to a new use, and, because of such new use, successfully to claim the benefits of the patent laws.

"Certainly a total lack of novelty and originality in the complainant's design is clearly shown. There is, indeed, an adaptation of old designs to new purposes, but that is not invention. * * * It is apparent that this patent cannot be sustained. The design which is its subject may be beautiful; it certainly is not novel, nor is it original with the patentee."

[2] It will be admitted that these cases do not improve the conditions of analogous subjects; however that may be, we have in the present record a knitted fabric of the same stitches, in the same series, with two saw cut selvage edges and applicable to analogous use, including scarfs, jackets, etc. Surely it cannot involve patentable novelty to make a scarf, and of this fabric, rather than make of it the knitted jacket, or chest protector, of analogous use, as shown in the record. There can be no reasonable doubt that the design shown in these exhibits are the same in substance and effect as Mead's design of the patent in suit applied to an analogous use. Any doubt of anticipation that hypercriticism may involve is, however, removed by the remaining exhibit of prior art as shown in the Harrison scarf. In it is contained the identical design of the Mead patent, applied to the same subject-matter before the alleged invention. The one is practically a facsimile of the other save so far as lies in the shape of the neck part, which is not only old and functional in character and clearly not a part of the ornamental design patented to Mead.

A decree may be entered to the effect: First, that defendant has not infringed upon any of the rights of complainant under the Mead design patent, No. 39,347, in and by the sale of the mufflers, or neck scarf, in evidence, by reason of the invalidity of said patent; second, that the preliminary injunction heretofore entered in this case be dissolved, and that the defendant recover costs, which shall include reasonable expense for printing of defendant's record. Let the decree save complainant's exceptions and right of appeal.