## WILSON v. UNION TOOL CO.

## SAME v. LUCEY MFG. CORPORATION.

(District Court, S. D. California, S. D. April 15, 1921. On Rehearing, November 18, 1921.)

Nos. E-99, E-100.

1. **Pleading ⊂⇒380—Attempt will be made to limit testimony to points in controversy.**

   In view of the growing mass of litigation, the court will use every reasonable means to simplify and lessen the issues in any case, and to narrow them to the subsisting points of controversy, and will endeavor to confine the testimony introduced to material and relevant matters.

2. **Patents ⊂⇒310 (1, 7)—Parties required to state exact rights claimed and interference therewith.**

   In patent cases the plaintiff will be required to state the precise right asserted by him, and the precise trespass upon that right alleged to have been committed by the defendant, and the defendant, who sets up matters of anticipation or the like, will be required to state the precise nature of the right asserted by him, but neither will be required to state reasons for his attitude.

3. **Equity ⊂⇒269—Parties allowed to amend claims to conform to new information.**

   The requirement of the court that the parties shall state the issues in controversy with precision will not be permitted to result in injustice, and if either party acquires information subsequently justifying or requiring the assertion of a different or broader claim, he will be permitted, if he acts with due promptness, to amend his claim.

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Patents ☞310(1, 7)—Parties required to give particulars as to exact claims, but not those calling for argument.**

In suits for the infringement of a patent, the respective parties will be required to give particulars asked for as to the claims infringed, the novel elements therein, the alleged infringing devices, and the equivalents, but will not be required to give particulars as to the respects in which the claimed infringement or anticipation consists, which calls for argument only.

### On Rehearing.

**5. Patents ☞292—Defendant not required to answer interrogatories which might result in "penalty."**

In suit for infringement of a patent, defendant, under equity rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv), is not required to answer interrogatories, if the answer may eventuate in the imposition of a "penalty," the chancery practice relative to bill of discovery being followed, so that rule that person may be compelled to give evidence against himself where action is not penal is not applicable, and the treble damages to which a defendant, decreed guilty of infringing a patent, may be subjected, being imposed as smart money or punishment in excess of actual compensation awarded to plaintiff, are in the nature of a penalty within the rule.

In Equity. Separate suits by Elihu C. Wilson against the Union Tool Company and against the Lucey Manufacturing Corporation for infringement of patents. On motions by both plaintiff and defendants for fuller statements of particulars and on objections to interrogatories propounded to defendants. Motions for further particulars granted as to some items, and refused as to others, and objections to interrogatories sustained.

Defendants' motion for further particulars embraced the following specific requests:

I. "Which of the claims of letters patent Nos. 1,314,996 and 1,341,957 in suit are alleged to be infringed by defendant."

II. "Which of the numerous devices manufactured and sold by defendant are alleged to infringe upon the letters patent in suit, and in that behalf that plaintiff identify such device or devices by reference to defendant's catalogue and catalogue number of the same."

III. "Precisely what plaintiff asserts or claims is new and patentable in each of the claims of the patents in suit charged to be infringed, and what plaintiff asserts each of such claims covers."

IV. "Precisely where, in defendant's alleged infringing device or devices, plaintiff asserts there is found the features set forth as new and patentable in response to paragraph III hereof, and in that connection that plaintiff:

"(a) Point out by reference characters applied to a drawing or cut of defendant's alleged infringing device or devices the elements of each of the claims of the patents in suit alleged to be infringed.

"(b) Point out by reference characters applied to a drawing or cut of defendant's alleged infringing device or devices the features set forth as new and patentable in response to paragraph III hereof."

V. "By a reference character applied to Figure 3 of patent No. 1,314,996 point out precisely what part of the device illustrated in the drawing of said patent plaintiff asserts corresponds to 'the swinging end' set forth in the last clause of claim 4 of said patent."

VI. "By a reference character applied to a drawing or cut of defendant's alleged infringing device or devices point out precisely what part of the same plaintiff asserts corresponds to 'the swinging end' set forth in the last clause of claim 4 of patent No. 1,314,996."

VII. "The particular cuts, illustrations, and printed matter used in complainant's circulars and advertisements and referred to in paragraph VIII

of the bill of complaint herein as having been copied by defendant, and in that connection that plaintiff produce and file specimens of the particular circulars and advertisements containing such cuts, illustrations, and printed matter."

VIII. "The particular cuts, illustrations, and printed matter published by defendant and referred to in paragraph VIII of the bill of complaint herein, as copying the cuts, illustrations, and printed matter of plaintiff, produced in response to paragraph VII hereof, and state just wherein plaintiff asserts defendant's said cuts, illustrations, and printed matter are copies of or resemble those of plaintiff, and when and where plaintiff asserts defendant published and distributed each of the same."

Plaintiff's requests for further particulars were as follows:

I. "Which of the numerous patents pleaded by reference in paragraphs VIII and IX of defendant's answer heretofore filed, and which claims thereof, the defendant will rely upon at the trial of this cause."

II. "In what respects each of the aforesaid patents upon which defendant will rely, as set forth in its response to paragraph I hereof, discloses any of the elements or combinations of elements described in plaintiff's United States letters patent Nos. 1,314,996 and 1,341,957."

III. "In what respects the novelty and invention of the devices shown and described in plaintiff's United States letters patent Nos. 1,314,996 and 1,341,957 are negatived by the features described and contained in the said claims of the said patents set forth in response to paragraph I hereof."

IV. "What particular printed matter or illustrations, contained within the indicated pages of the price book and three catalogues referred to in subdivision (b) of paragraph IX of the defendant's answer heretofore filed is alleged to negative the invention and novelty of the devices shown and described in plaintiff's said letters patent."

V. "In what respects the novelty and invention of the devices shown and described in plaintiff's said United States letters patent Nos. 1,314,996 and 1,341,957 are negatived by the printed descriptions or illustrations referred to in the aforesaid price book and three catalogues mentioned in subdivision (b) of paragraph IX of the defendant's answer heretofore filed."

VI. "What elements or combinations of elements described and claimed in plaintiff's aforesaid letters patent are alleged by the defendant to be described or illustrated or shown within the indicated pages of the aforesaid price book and three catalogues referred to in subdivision (b) of paragraph IX of the defendant's answer heretofore filed."

Plaintiff's interrogatories propounded to defendants covered a variety of special subjects, but the following fairly illustrates their general nature and tenor:

III. "Does the defendant corporation now manufacture, use or sell well casing elevators containing the following elements or substitutes for any thereof, or has it done so at any time since September 2, 1919:

"(a) Two relatively movable clamping and holding members, having a hinge connection and capable of being opened or closed at such hinge connection, when a pipe is between same.

"(b) Suspension means connected with one only of the clamping members.

"(c) Securing means whereby said members are held together in working relation.

"(d) Said member with which said suspension means are connected being provided with an abutment upon which is seated the swinging end of the other clamping member."

G. Benton Wilson, of Los Angeles, Cal., for plaintiff.

Frederick S. Lyon and Leonard S. Lyon, both of Los Angeles, Cal., for defendants.

BLEDSOE, District Judge (after stating facts as above). In these cases, involving the same patents, motions for a further and fuller statement of particulars have been made, both by plaintiff and the re-

spective defendants, and interrogatories have been propounded by the plaintiff, pursuant to equity rule 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv), and to all of those objection is made.

[1] Without going into detail in the premises, in accordance with the views heretofore expressed by the court at a previous argument of these matters, this court is disposed to accept the suggestions indulged in by Judge Augustus N. Hand of the Southern District of New York, contained in McLeod Tire Corp. v. B. F. Goodrich Co., 268 Fed. 205, 206. It is there said:

"It has been the practice in this district to attempt to simplify the issues and limit the testimony necessary at the trial by allowing inspection and compelling answer to interrogatories in patent cases very liberally. We have stopped little short of requiring almost everything except the names of witnesses and such information as would enable the interrogator to bring forward untruthful testimony to meet the evidence of his adversary."

In the presence of the great mass of accumulated and growing litigation with which this court is now burdened, I am determined to use every reasonable and just means at my command to simplify and lessen the issues in any controversy demanding my consideration and adjudication. In that spirit and in all cases, I will make effort to confine the testimony to be adduced to those matters which are material and relevant and those only, and in addition will seek to narrow and limit the issues so that only the real subsisting points of controversy will be exhibited.

[2] In this wise, the plaintiff, in patent cases, for instance, will be required to state the precise right asserted by him and the precise trespass upon that right alleged to have been committed by the defendant; the defendant on his part, setting up matters of anticipation or the like, will be required to state the precise nature of the right thus asserted by him which is claimed to amount to a defense, etc. This will not require that either party shall write a brief, or anything in the nature of a brief. It does not mean the giving or stating of reasons for the attitude assumed or the right claimed. It simply means that there shall be a definite, succinct, and precise assertion of the thing that is relied on, either in support of claimed relief or by way of defense. I think such a course of procedure will conduce to added clarity in the statement and understanding of the issues involved, and will bring about a much hoped for economy in the matter of effort, time, and money. Litigation should not only be conducted with all due celerity; it ought to be conducted as cheaply as possible, in order that relief, to whomsoever due, may be accorded with as little cost, both to the individual and to the community, as the reasonable necessities of the case may require. These views I think are supported in spirit by the conclusions announced by Judge (now Mr. Justice) Clarke, in Coulston v. Franke Steel Range Co. (D. C.) 221 Fed. 669, by Judge Learned Hand, in Grand Rapids Show Case Co. v. Straus (D. C.) 229 Fed. 199 and by Judge Mayer, in Dick Co. v. Underwood Typewriter Co. (D. C.) 235 Fed. 300.

It is obvious, of course, that this program may not be given any effective enforcement, except in virtue of the cordial co-operation of

the bar. This the court expects and has a right to receive. Much of the criticism indulged in against the courts arises because of the expensive and long drawn out course that litigation all too frequently has to take. This court is determined that as little as possible of this criticism shall be laid at the door of the court itself. It will be true, of course, that the court itself cannot frame or specify the issues, and it must rely upon the disposition of counsel to accommodate itself to the attitude of the court, for a proper realization of the ultimate end in view.

[3] In this behalf, too, it ought not to require special mention that, in the matter of more sharply defining the issues in a controversy, the court will at no time lend countenance to the doing of anything that will result in injustice. Its aim is to do justice in the premises, and it will not be led hastily, by its ambition in that behalf, to do that which will result in injustice in any instance. For example: Any party who may have been limited by a statement of a particular issue or claim upon which he relies, and who for any reason acquires information subsequently justifying or requiring the assertion of a different or broader claim, will be permitted, acting with due promptness, to amend his claim so made or previously stated.

[4] In conformity with these views, in E-99, the plaintiff will be required, in response to defendants' motion for further particulars, to make answer to particulars specified in paragraphs 1, 2, the first portion of paragraph 3, paragraph 4 with respect both to clauses (a) and (b), paragraphs 5, 6, 7, and the first part of paragraph 8. The latter part of paragraph 3 calls merely for argument on the part of plaintiff, and is not proper to be elicited at this time. The latter part of paragraph 8 is also argument, or mere descent into unnecessary detail. The same ruling, for the same reasons, will apply to the request for further particulars made of plaintiff in E-100. The motion of plaintiff for further particulars to be stated by defendants will be granted as to paragraphs 1, 2, 4, and 6 in each of the cases. Paragraphs 3 and 5 call for argument only, and not such statement of facts as the court is persuaded plaintiff is entitled to.

[5] Objection is urged on various grounds against the interrogatories propounded by plaintiff. It seems to be the rule, supported by reason and authority, that unless plaintiff has specifically waived such penalty, a defendant may not be required to answer interrogatories, if such answer will or may eventuate in the imposition of a penalty by way of treble damages. Speidel Co. v. Barstow Co. (D. C.) 232 Fed. 617. In addition, the questions propounded by the plaintiff to the defendants call for conclusions, rather than facts.

In consequence, the objections to the interrogatories submitted are sustained.

## On Rehearing.

[5] Plaintiff has moved for a rehearing of that part of the ruling hereinabove sustaining defendants' objections to plaintiff's interrogatories on the ground that they may eventuate in the imposition of a penalty by way of treble damages, etc. Plaintiff's claim in this behalf

is that this proceeding is not "penal" or criminal in its nature, that a defendant is protected from being compelled to give evidence against himself only when such evidence may result in criminal proceedings being had against him, and that therefore there is no protection to be accorded to a defendant in a court of equity, with respect to a "discovery" of things done by him, the doing of which can in no wise subject him to criminal punishment. In support of his contention, plaintiff cites Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123; U. S. v. Nash (D. C.) 111 Fed. 528; Blum v. Widdicomb (C. C.) 90 Fed. 220; U. S. v. Southern Pacific Co. (D. C.) 162 Fed. 412; LaBourgoyne (D. C.) 104 Fed. 823; Masseth v. Johnston (C. C.) 59 Fed. 613; Untermeyer v. Freund, 58 Fed. 210, 7 C. C. A. 183; Walker on Patents (5th Ed.) § 568, p. 530; Quirk v. Quirk (D. C.) 259 Fed. 597.

In consequence of the elaborate argument made and the citation of the above authorities, no less than because of the intrinsic importance of the subject-matter, I have felt constrained to give the matter some considerable independent investigation. As a result of that, I am, I feel, compelled to adhere to the original ruling and deny the application for a rehearing. It may be conceded at the outset that a proceeding in a court of equity to enjoin infringement of a patent, and collect damages and profits for the infringement already suffered, is not a penal action. Nor does the possibility that the court may, in its discretion, award treble damages, convert such proceedings into a "penal" action, within the primary signification of that term. So the cases cited by plaintiff and referred to hereinabove directed to that point may be passed over as being entirely inapplicable herein.

The interrogatories herein were filed pursuant to federal equity rule No. 58 (198 Fed. xxxiv, 115 C. C. A. xxxiv), which makes detailed provision for the filing and enforced answering of interrogatories to be propounded by either or both of the parties. These interrogatories, in the language of the rule, are intended to result in "the discovery by the opposite party or parties of the facts or documents material to the support or defense of the cause." All parties herein seem to concede that the procedure for the discovery referred to in the rule is but a modern application of the proceeding known to the English Court of Chancery as a bill of discovery. Therefore, unless changed by statute or by the equity rule itself, it would seem most fitting and proper that, in taking advantage of this modern practice, the rules applied to the procedure formulated and adhered to by the Court of Chancery, which gave rise to the proceeding originally, should be adhered to.

Hare, in his work on Discovery (2d American Ed.) p. 131, says that, if an answer to the proposed discovery will subject the defendant to "any penalty or forfeiture or disability in the nature of a penalty," no discovery will be ordered. Mr. Justice Story's discerning treatise on Equity Pleadings (7th Ed.) § 575 et seq., has this to say:

"Another objection, which may be taken by way of demurrer to a bill of discovery, is that it may expose the defendant to a penalty or a forfeiture, or that it may compel him to criminate himself. The rule is that the defendant shall not be obliged to discover, what *may* subject him to a penalty or for-

feiture, or criminal accusation, and not what *must* only.   *   *   *   This doctrine seems founded on the great principles of constitutional right, settled in early times in England, and brought by our ancestors to America, by which it is established that no man is bound to accuse himself of any crime, or to furnish any evidence to convict himself of any crime. The maxim of the common law is, 'Nemo tenetur seipsum prodere.' It constituted one of the just objections to the Court of Star Chamber that, in criminal informations, it compelled the party accused to answer upon oath to the accusation, and thus, in arbitrary times, became an instrument of gross oppression and injustice. But the Court of Chancery has always steadily refused to compel any man to criminate himself, *and, by analogy to disclose any fact which will subject him to a penalty or forfeiture;* and it has thus assisted in carrying into complete effect the benign maxim of the common law above alluded to. So that it is the just boast of Lord Hardwicke that the general rule, established with great justice and tenderness in the law of England, is fully recognized and acted on in courts of equity, that no person shall be obliged to discover what may tend to subject him to a penalty or punishment, *or to that which is in the nature of a penalty or punishment.*" (Italics supplied.)

In section 521 of the same work he announces that, unless a waiver of such penalty or forfeiture be made by the plaintiff, a demurrer to the discovery would lie. In a note to that section he cites many authorities pertinent to the question, including the statement of Lord Redesdale respecting treble tithes hereinafter referred to.

Mr. Daniell, in his Pleading and Practice of the High Court of Chancery (5th American Ed.) p. 387, in adverting to a discovery which might subject the defendant to a penalty or forfeiture, says:

"It is a rule in equity that no person can be compelled to make a discovery which may expose him to a penalty, or to anything in the nature of a forfeiture. As, however, the plaintiff is, in many cases, himself the only person who would benefit by the penalty or forfeiture, he may, if he pleases to waive that benefit, have the discovery he seeks. The effect of the waiver, in such cases, is to entitle the defendant (in case the plaintiff should proceed, upon the discovery which he has elicited by his bill, to enforce the penalty or forfeiture) to come to a court of equity for an injunction, which he could not do without such an express waiver. It is usual to insert this waiver in the prayer of the bill, and if it is omitted the bill will be liable to demurrer."

This disposes of plaintiff's contention that it is only a "penalty" payable to, or inuring to the benefit of, *the public,* which will justify a court of equity in declining to compel a defendant to discover. A given plaintiff may not effectually waive a penalty or payment to be made to the public; the procedure based upon an effective and acceptable waiver demonstrates that a penalty going to an individual was as much the subject of protection as one going to the public.

Quoting Lord Redesdale, Mr. Daniell continues:

"Upon this same principle, if a rector or impropriator, or a vicar, file a bill for tithes, he must waive the penalty of the treble value, to which he is entitled by the statute of 2 & 3 Edward VI.: otherwise, his bill will be liable to demurrer. It seems, however, that if the bill pray an account of the single value of the tithes only, such a prayer will amount to an implied waiver of the treble value, and that an injunction may be granted against suing for the penalty of the treble value, as well upon this implied waiver as upon the most express."

In Livingston v. Tompkins, 4 Johns. Ch. (N. Y.) 432, 8 Am. Dec. 598, it was said:

"There are numerous cases establishing the rule that no one is bound to answer, so as to subject himself, either directly or eventually, to a forfeiture or penalty, or anything in the nature of a forfeiture or penalty."

These authoritative expressions of practice obtaining in the Court of Chancery are clearly to the point that no discovery will be enforced against a defendant, if the immediate or eventual result thereof may operate to subject him to anything in the nature of a forfeiture or penalty.

The only other question to be determined herein, then, is: Are the treble damages to which a defendant, decreed guilty of infringing a patent, may be subjected, "anything in the nature of a forfeiture or penalty"? That they are seems to me to be too clear for argument. In the language of the day, they are normally imposed as "smart money" or punishment. As I understand the rulings of the courts, although awarded in the discretion of the court, they are intended primarily to furnish "punitive" or "vindictive" damages, damages in excess of the actual compensation to be awarded to a plaintiff in virtue of a wrong suffered by him, and to operate as a punishment upon the defendant for either a wanton or willful or aggravated infringement of, or trespass upon, the rights of the plaintiff, accruing to him in virtue of his patent. That they are so considered, it seems to me, is well settled by numerous decisions of the federal courts. See cases cited in 8 U. S. Comp. Stats. 1916, pp. 10452, 10591, 10592.

Treble damages were considered by Lord Redesdale in the instances cited by him to constitute a penalty, and therefore to be within the protection of the rule of practice of the High Court of Chancery. Added damages for failure to deliver a telegram, has been held to be a penalty. Kirby v. Western Union Telegraph Co., 4 S. D. 463, 57 N. W. 202. A similar ruling was announced in Langdon v. New York, etc. (Sup.) 9 N. Y. Supp. 245. In State v. Warner, 197 Mo. 650, 94 S. W. 962, the Supreme Court of Missouri held that, in the municipal law of England and America, the word "penalty" is used in various senses. Strictly speaking, it denotes punishment. It is also, however, it was said, commonly used as including any extraordinary liability to which the laws subject wrongdoers in favor of the persons wronged and not limited to the actual damage suffered. In 17 C. J. 997, it is said that multiple damages are provided for by statute in some (many) jurisdictions. "These statutes are penal or punitive in character." In Consolidated Rubber Tire Co. v. Diamond Rubber Co. (D. C.) 226 Fed. 455, Judge Learned Hand, in making an award in the way of treble damages in the sum of $50,000, designated them as "punitive damages." In 22 American & English Encyc. of Law, p. 499, it is said that the court will increase damages in patent infringement, when the infringement is "deliberate and intentional, or wanton and persistent, but ordinarily not otherwise." See, also, Missouri Pac. R. Co. v. Ault, 256 U. S. ——, 41 Sup. Ct. 593, 65 L. Ed. ——, decided June 1, 1921.

These authorities, it seems to me, justify the conclusion that treble damages, which may be awarded by a court of equity pursuant to the provisions of section 4921 of the Revised Statutes (Comp. St. § 9467),

are so "in the nature of a penalty" as to justify a court of equity in declining to compel a defendant to furnish the evidence by his own answers whereby such damages may be inflicted. The same conclusion was reached by Judge Betts in Finch v. Rikeman, Fed. Cas. No. 4,788, in which, construing section 14 of the Act of July 4, 1836 (5 Stats. at Large, 123), which is similar in all respects to section 4921 of the Revised Statutes in so far as the provision for treble damages is concerned, he held that he would make no order for the production of books to show the amount and extent of defendant's alleged infringement, "in the absence of a relinquishment of all claim to the penalty of three times the amount of the damages" proven.

The petition for a rehearing of the objections to the proposed interrogatories is denied.