Voltz *v.* General Motors Acceptance Corporation, Appellant.

Argued October 6, 1938.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Dan T. R. Dickson,* for appellant.

*John E. Evans, Sr.,* of *Margiotti, Pugliese, Evans & Buckley,* for appellee.

OPINION BY MR. JUSTICE MAXEY, December 5, 1938:

Plaintiff brought an action in replevin against defendant to secure possession of an automobile.

The statement sets forth that on April 3, 1935, plaintiff purchased from F. N. Briner, trading as the Briner Motor Company, a Pontiac Sedan, for the sum of $850, that on August 9, 1935, the defendant, General Motors Acceptance Corporation, through its servants and agents, broke and entered the garage of plaintiff at night and took therefrom this sedan and removed it to Pittsburgh, and that defendant was unlawfully detaining it. Defendant denied that plaintiff became the owner of the car and that the consideration of $850 was fully paid, and averred that plaintiff acquired possession by duly executing a bailment lease with Briner Motor Company, which lease was subsequently assigned to defendant, that plaintiff failed on June 27, 1935, to pay the defendant the regular installment due under the lease, and that "the automobile was, agreeably to the terms of the lease, peaceably retaken from the garage of the plaintiff, which was then and there open and unlocked." Defendant averred that the automobile was the property of defendant and that plaintiff had no equity or interest therein.

Voltz, the plaintiff, testified that because Briner was indebted to him for a sum of money the purchase price of the automobile was to be credited upon this indebtedness, but Briner told Voltz that he needed some money to clear the title and Voltz then gave him two checks for $400 and $200, respectively, and that the balance of $250 was liquidated by Voltz giving Briner credit upon a check of Briner's originally given Voltz for $750 and upon which only $500 had been paid. He also testified that he got the license plates and owner's card for the automobile, but received "no title paper," that when he signed the application for a title certificate, it contained the typewritten word "No" after the inquiry as to encumbrances and the word "None" after the inquiry as to

liens, that the first time he knew that the car had been financed by defendant was when the latter sent him a book containing detachable coupons to be used in making monthly payments to defendant. On cross-examination he denied that the bailment lease bore his signature. Voltz told his auditor about receiving this book and the latter went to defendant's office and told the credit man, Updegraff, that Voltz "wanted to know why he should receive a book when he had never financed the car." Updegraff replied that he had a lease signed by Mr. Voltz. The auditor then told Updegraff that Voltz "had never signed a lease for the car, that he had paid cash for it to the Briner Motor Company." When the auditor was shown the lease, he told Updegraff that it was not Voltz's signature.

Martha Witherow, called on behalf of plaintiff, testified that she put the car in the garage for plaintiff the night before it was taken by representatives of defendant, that she closed the two doors and hooked them with "a screen door hook" from the inside and then went out another small door which she locked, and that the next morning after the car was taken she noticed that the piece of wood that kept the doors together was gone.

Briner, called on behalf of defendant, admitted receiving the two checks totaling $600 towards the purchase price of the car, but said that the balance due of $250 was to be deducted from the proceeds of the sale of a 1933 model car that Voltz left with him to sell and the balance after this deduction was to be given to Voltz. There is evidence that Briner secured a loan on this used car without the knowledge or consent of Voltz, and the latter was thereby required to pay several hundred dollars to redeem this car. Briner testified further that when Voltz signed the title for the new car there was nothing on it but the printing, that he needed some money and asked Voltz if he could send a lease in for the car, that he (Briner) would make the payments on it, that Voltz agreed to this, that he did not see plaintiff

sign the lease and "don't know" whether he signed it or not, that he sent the lease in and received a check for $700 from defendant, that he made one payment on the car and did not make any more as the "garage was closed after the first payment."

The two men who took the car from plaintiff's garage testified that they used no force to effect an entrance to the garage and did not "break or damage any portion of the door" and that the "door was open about three feet." They admitted that they saw the automobile in front of plaintiff's home on the night preceding the morning they took it but did not attempt to take it at that time or communicate with Voltz and apprise him of their intention. They said, "It was easier to take it out of the garage." It also appears from the testimony that the engine was not started in the garage but that the car was pushed into the street by these men at about 2:30 a. m. The inference plaintiff draws from this is that defendant seized the car in a stealthy manner. The inference is logical.

When plaintiff sued out a writ of replevin for the automobile, defendant filed a counter-bond and retained possession of it. The jury returned a verdict for plaintiff for the agreed value of the automobile, $800.00, and detention damages of $59.73, and further awarded punitive damages to the extent of $2,500. Defendant's motions for judgment n. o. v. and for a new trial were refused. This appeal followed.

The jury's verdict for the plaintiff indicated that it credited the testimony plaintiff offered it. The issue of fact having been properly submitted in a clear, comprehensive and correct charge, there are no grounds for a new trial. There is no legal basis for entering judgment for defendant n. o. v.

The only merit we find in this appeal relates to the award of punitive damages. Such damages are, as the nomenclature indicates, penal in character, and the appropriateness of any penalty seldom admits of exact

measurement. The court below in its opinion character-
ized the conduct of the defendant and its agents as "out-
rageous and highhanded." Without questioning the jus-
tice of this characterization, we think punitive damages
in the sum of one thousand dollars sufficiently punishes
the defendant for its unlawful act. The judgment
against the defendant is therefore reduced by $1,500.

As so modified, the judgment is affirmed.