Philadelphia *v.* Cline et al., Appellants.

Argued September 28, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Thomas D. McBride,* for appellants.

*Abraham Wernick,* Assistant City Solicitor, with him *Frank F. Truscott,* City Solicitor, for appellee.

OPINION BY RENO, J., November 19, 1945:

The City of Philadelphia, by capias ad respondendum, instituted actions against eight residents of New Jersey employed by the United States at the Naval Air Material Center on League Island to recover penalties for their failure to file returns under the Earned Income Tax

Ordinance approved December 13, 1939, as amended, declaring the income earned by them at that employment during the years 1942 and 1943, respectively. From judgments in favor of the city these separate appeals have been taken, but as the questions involved are common to each, all the cases will be disposed of in one opinion.

At the trial the city called as witnesses persons in charge of personnel and payroll records at the Naval Air Material Center who testified that eight individuals with names corresponding to those of these defendants and who lived at various addresses in New Jersey had been employed at League Island during the years in question, had been assigned certain identification numbers by the employing agency, and had earned various amounts of compensation for their services. The witnesses said they were not acquainted with the individuals to whom the records related and that they did not know whether those persons were the defendants on trial. Over the objection and exception of their counsel, each of the defendants was then called as under cross-examination and was required to state his name and address. The court sustained objections to questions inquiring where defendants worked during 1942 and 1943, what their employment numbers were, how much their earnings had been, whether they had received notices from the Receiver of Taxes requesting them to file returns of their income, whether they had filed tax returns and paid taxes to the city on their incomes, and whether they had received from the Federal Government forms indicating the exact amount of their earnings, on the grounds that defendants had a constitutional privilege to refuse to give evidence against themselves. A supervisor in the Wage Tax Bureau next testified that he had examined the files under his control, that no returns filed by defendants had been found, and that if such returns had been filed they would, in the orderly course of office pro-

182

cedure, have been deposited in the places where the witness looked. To conclude its proof the city called a witness who produced the identification badges containing the employment numbers, photographs, and age, height, and weight statistics of each of the eight employes to whom the earlier proof had pertained. Objections were sustained to questions addressed to defendants seeking to elicit whether the photographs were of them, and what were their respective ages, heights, and weights. During the course of his summation to the jury, the Assistant City Solicitor argued: "And if they had paid it, don't you think these defendants would have come in and testified to that—" Defendants' motion to withdraw a juror on the ground that such comment was not permissible in this type of case was overruled.

The questions raised by defendants and which will be discussed seriatim are as follows: (1) Is that portion of the ordinance which requires taxpayers to file a return, and imposes a penalty for their failure to do so, unconstitutional as violating the privilege against self-incrimination; (2) Has the city jurisdiction to impose a fine upon nonresidents working at League Island for failing to file returns of their income as required by the ordinance; (3) Can an action to recover such a fine be instituted by capias ad respondendum; (4) In an action to recover a fine for failure to file a tax return may the city call upon the defendants to testify; and (5) In an action to recover a fine under the ordinance, may the city's attorney comment to the jury upon defendants' refusal to testify?

(1) Section 3 of the ordinance requires each person subject to its provisions to file a return with the Receiver of Taxes on or before March 15th of the year following that in which taxable income was earned. The return must contain an accurate report of the taxable income and a calculation of the tax due, and the ordinance requires the taxpayer to pay at least one-fourth of

the tax imposed at the time the return is filed. Section 9 of the ordinance provides that any person who neglects to file a return or pay the tax is subject to a fine of one hundred dollars and costs, and upon failure to pay the fine and costs within ten days to imprisonment for not more than thirty days. Defendants assert that since the ordinance requires them to file returns evidencing their liability for the tax and at the same time makes them liable to a fine for mere nonpayment of any tax imposed it is unconstitutional for compelling them to give evidence, i.e. the return, that may be used against them in a proceeding to collect the fine for nonpayment of the tax. The fallacy of this ingenious contention is that the ordinance does not require defendants to confess that they are liable to the fine for nonpayment of the tax, as at the time the informational return is to be submitted to the city authorities the taxpayers are not admitting a past delinquency, and whether or not a particular taxpayer will ever be subject to a fine in the future for failing to pay the tax confessed to be due is a matter which rests entirely with him. "The generalization, therefore, may be made, that there is no compulsory self-crimination in a rule of law which merely requires beforehand a future report on a class of future acts among which a particular one may or may not in future be criminal at the choice of the party reporting": 8 Wigmore on Evidence (3rd ed.) §2259c.

(2) By the Act of August 5, 1932, P. L. 45, §1, 53 PS §4613, the councils of cities of the first and second class are given authority by ordinance to levy and collect ". . . taxes on persons, transactions, occupations, privileges, subjects and personal property, within the limits of such city . . ." where such subjects of taxation are not taxed by the Commonwealth, and they are empowered by §3 of that statute, 53 PS §4615, to prescribe and enforce penalties for the nonpayment of taxes imposed or for violation of the ordinances passed under the au-

thority of the act. By the Act of March 25, 1929, P. L. 66, No. 75, §1, 53 PS §3451, cities of the first class are empowered to impose limited fines, with imprisonment in default of payment, for violation of their ordinances. Consequently, the power of the city to impose the penalties here in issue is apparent beyond peradventure if League Island is "within the limits of such city" for tax purposes. That question was squarely decided adversely to appellants' position by the Supreme Court in *Kiker v. Philadelphia*, 346 Pa. 624, 31 A. 2d 289, and cannot be re-examined here. Act of June 24, 1895, P. L. 212, §10, 17 PS §198.

(3) The argument that the provision in §8 of the ordinance that all taxes, interest, and penalties to which the city shall become entitled ". . . shall be recoverable by the City Solicitor as other debts of like amount are recoverable" restricts the city to actions begun by summons in assumpsit to the exclusion of those instituted by capias ad respondendum is difficult to follow. The Act of July 12, 1842, P. L. 339, §1, 12 PS §257, abolishing imprisonment for debt, expressly except from its operation arrest on civil process in ": . . action for fines or penalties, . . ." and §8 of the ordinance manifestly relates merely to the selection of the tribunal before which actions brought under it shall be begun, rather than to the process to be issued after the jurisdiction of a particular court has been established by reference to the amount in controversy in individual cases.

(4) In a proceeding to recover a statutory fine or penalty the defendant may take advantage of his constitutional privilege to refuse to give evidence against himself even though such an action is not brought in a criminal court but is prosecuted through the modes of procedure applicable to the ordinary civil remedy. *Osborn v. First National Bank*, 154 Pa. 134, 26 A. 289. See also *Logan v. Pennsylvania R. Co.*, 132 Pa. 403, 19 A. 137. In *Boyle v. Smithman*, 146 Pa. 255, 274, 23 A. 397, a suit

to recover a penalty for defendant's failure to comply with an Act of Assembly requiring certain dealers in petroleum publicly to post statistics concerning their business, the Supreme Court said: "The defendant could not be compelled to testify against himself as a witness . . . He had an unquestionable right to insist upon his privilege, and the court was bound to protect him in the enjoyment of it." In those cases where a defendant has a privilege to refuse to testify, it is error to call upon him to take the stand in the presence of the jury and require him to claim his constitutional safeguards, as the refusal to answer is an eloquent incriminatory act and the spectacle produced, if permitted, would effectually emasculate the time-honored principles extending the haven of silence to one who may by the outcome of litigation be subjected to the imposition of a fine or forfeiture. *Com. v. Valeroso,* 273 Pa. 213, 116 A. 828. The city's argument that the privilege is available in actions to recover statutory penalties but not those inflicted for the violation of a municipal ordinance is not persuasive. It would be anomalous to deny the authority of the state to require the compulsory testimony of the defendant in a proceeding to recover a forfeiture incurred under one of its statutes, but to permit a municipality to do that very thing, when the municipality is a creature of, and derives all its powers from, the sovereignty of the Commonwealth.

(5) Little need be said to demonstrate that the argument to the jury commenting upon and urging adverse inferences to be drawn from the defendants' refusal to testify was prejudicial error independently of the Act of May 23, 1887, P. L. 158, §10, 19 PS §631, which prohibits the adverse reference to the failure of a defendant actually on trial in a criminal court to offer himself as a witness and which, manifestly, has no application here. In the language of the Supreme Court in *Boyle v. Smithman,* supra, p. 274: "The privilege of the defendant to

decline to furnish evidence against himself, would be of very little value if the fact that he claimed its protection could be made the basis of an argument to establish his guilt. To extend to a defendant the formal protection of his privilege, and then allow the fact that he had claimed it, to be used as affording a presumption against him, would be a sort of mockery of which the law is not guilty."

In appeals Nos. 151, 152, 153, 154, 155, 157 and 158, the 4th, 5th, 9th, 11th and 12th assignments of error are sustained; the remaining assignments of error are overruled; the judgments are reversed; and the several records are remitted with a venire facias de novo. In appeal No. 156, appellant William G. Barnes having withdrawn the assignments of error relating to his claim to a new trial, his remaining assignments of error are overruled and the judgment is affirmed.