### AMATO v. PORTER.
### No. 3360.

Circuit Court of Appeals, Tenth Circuit.

Oct. 26, 1946.

Harold Taft King, of Denver, Colo., for appellant.

Albert M. Dreyer, of Washington, D. C. (George Moncharsh and David London, both of Washington, D. C., and Max D. Melville, of Denver, Colo., on the brief), for appellee.

Before HUXMAN and MURRAH, Circuit Judges, and BROADDUS, District Judge.

HUXMAN, Circuit Judge, delivered the opinion of the court.

The appellant, Marion M. Amato, is a wholesale distributor of bananas in Denver, Colorado. As such, he was subject to the Office of Price Administration Act,[1] and to the regulations of the Administrator promulgated thereunder. The administrator instituted an action against him in the United States District Court for the District of Colorado for treble damages under Sec. 205 (e) of the Act, as amended, alleging overcharges on sales of bananas. The action was prosecuted on evidence adduced by the Administrator from an examination of the records which the appellant was required to keep under the regulations of the Administrator. A motion to dismiss and a motion to supress the evidence were filed, and were overruled by the court, 60 F.Supp. 361, and the appellant was found guilty of violating the provisions of the Act.

[1] 50 U.S.C.A.Appendix, § 922.

Section 202(b) of the Act authorized the Administrator by proper regulation or order to require any person who is engaged in business subject to the Act to keep certain records and other documents, and to make reports, and provides that the Administrator may require any such person to permit the inspection and copying of records and other documents and the inspection of inventories in enforcing the provisions of the Act. Section 202(g) of the Act provides that no person shall be excused from complying with any requirements under this section because of his privilege against self incrimination, but that the immunity provisions of the Compulsory Testimony Act of February 11, 1893, 49 U.S.C.A. § 46, shall apply with full respect to any individual who specifically claims such privilege.

The Compulsory Testimony Act provides that no person shall be prosecuted or subjected to any penalty or forfeiture on account of any transaction made or things concerning which he may be compelled to testify or produce evidence, documentary or otherwise. It is under this provision that appellant sought the suppression of testimony upon which judgment was entered against him, and now seeks a reversal of the judgment of the court below.

The Administrator urges two grounds in opposition to the position of appellant, namely, that these are public records and that as to them appellant has no immunity, and, second, that this is a civil and not a criminal proceeding and therefore the constitutional immunity does not, in any event, apply.

■ The Compulsory Testimony Act must be construed as coterminous with the constitutional immunity privilege of the individual. Heike v. United States, 227 U.S. 131, 33 S.Ct. 226, 57 L.Ed. 450, Ann.Cas. 1914C, 128. In other words, it does not add to the constitutional immunity. It merely manifests the intent that nothing is taken away. But the constitutional immunity against self-incrimination does not protect an individual against a demand for the production of all records or evidence in his possession, even if the production thereof might subject him to personal prosecution. This question is extensively treated in Wilson v. United States, 221 U. S. 361, 31 S.Ct. 538, 545, 55 L.Ed. 771, Ann.Cas.1912D, 558. It is there pointed out that the constitutional immunity exists only as to private papers, but does not extend to public records or records required to be kept by law. The court states that: "The fundamental ground of decision in this class of cases is that where, by virtue of their character and rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production although their contents tend to criminate him."

■ The records from which the evidence used was taken are required to be kept by the Act and the regulations promulgated pursuant to the provisions thereof for the purpose of effectuating the salutary purposes sought to be accomplished thereby and make possible its enforcement. They are quasi-public in character and as to them the privilege of self-incrimination under the Fifth Amendment does not apply.[2]

■ The second ground upon which the Administrator relies to sustain the judgment is also well taken. Whether a proceeding for the imposition of sanctions for the violation of the Act is criminal or civil cannot be determined from the nature of the sanctions alone. The treble damages provided in the Act are penal in nature, but that is not sufficient in itself to make the proceeding in which they are imposed a criminal one. If the object of the penalty is primarily to punish the wrongdoer, the action is ciminal. If, however, on the other hand, its primary object is to protect the public and to effectuate a public policy sought to be accomplished by the Act, it is remedial and is a civil action. See United States ex rel. Marcus v. Hess, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443. The Act here was passed during a national crisis, while we were engaged in a global war. Its broad general scope and purpose was to protect the national economy as much as possible from the mal-

---

2 See Bowles v. Beatrice Creamery Co., 10 Cir., 146 F.2d 774.

adjustment of the war. The enforcement provisions and sanctions provided for in the Act were for the primary purpose of effectuating the public policy of the Act and securing compliance therewith, and not mainly for the purpose of punishing those who violated its provisions. Considering the declared purposes of the Act and the interest of the government in its enforcement, an action for the imposition of the sanctions authorized is remedial and not penal in nature, and the immunity granted by the Fifth Amendment does not therefore come into play.

Affirmed.