EMILY ALLRED *v.* FRANK GRAVES, WILLIE GRAVES, PERRY CHRIS-COE, J. C. CHRISCOE, DEMPSEY FREEMAN, DEMPSEY ODOM, THURMAN CHRISCOE, PETE BEAN AND GLENN CHRISCOE.

(Filed 17 January 1964.)

**1. Constitutional Law § 33—**

The constitutional guaranties against self-incrimination are to be liberally construed and they apply not only to criminal prosecutions but to any proceedings sanctioned by law, including examinations before trial. Constitution of North Carolina, Art. I, § 11.

**2. Damages § 10—**

Punitive damages may be awarded in a civil action, not as an award of compensation, but by way of punishment or penalty for conduct intentionally wrongful.

**3. Same;     Execution § 17—**

Punitive damages are recoverable in an action for unlawful and malicious assault and, when awarded, execution against the person of defendants may issue after return of execution against their property wholly or partly unsatisfied, G.S. 1-410(1), G.S. 1-311, in which event G.S. 23-29, 2 applies and defendants are entitled to their discharge only upon payment or upon giving notice and surrender of all property in excess of $50.00 (G.S. 23-23, G.S. 23-30 through G.S. 23-38) which deprives defendants of their homestead and personal property exemptions above the $50.00.

**4. Damages § 10;     Constitutional Law § 33—**

Constitutional guaranties against self-incrimination apply not only to strictly criminal actions but also to civil actions in which defendant may be arrested under G.S. 1-410 and in which execution against the person is authorized by G.S. 1-311, upon return of execution against the property unsatisfied. Constitution of North Carolina, Art. I, § 11, but the constitutional guaranties would not apply to such action if plaintiff relinquishes her claim to punitive damages.

**5. Bill of Discovery § 3—**

In a civil action to recover compensatory and punitive damages for malicious assault, defendants are not entitled to the denial of plaintiff's application for an examination of defendants prior to trial, G.S. 1-568.11(a) (b), solely because they claim that any answer they might make might subject them to a penalty, since that would rest the matter upon the *ipse dixit* of the party and not the judgment of the court.

**6. Appeal and Error § 3—**

While an appeal from an order for an adverse examination prior to trial may be subject to dismissal as premature, the Supreme Court in the exercise of its supervisory jurisdiction may consider the appeal on its merits to determine a question of first impression in the interest of the expeditious administration of justice.

BOBBITT, J., dissenting.

APPEAL by defendants from *Walker, S.J.*, 16 September 1963 Civil Session of RANDOLPH.

Plaintiff alleges in her complaint that about 8:30 p.m. on Saturday, 5 May 1962, all nine defendants, pursuant to a preconcerted conspiracy, came to her house and unlawfully and maliciously assaulted her and certain members of her family. She alleges the casualties as follows: Out in the yard her sixteen-year-old son Larry Allred had an open knife pulled on him by J. C. Chriscoe and a pistol pointed at him by Perry Chriscoe, was hit in the jaw by one of them knocking him down and bursting his jaw, and then when he jumped up and ran, he was shot at by Perry Chriscoe. Doug Purvis, a visiting neighbor, was shot at by Perry Chriscoe when he was running. Out in the yard her twenty-five-year-old son Merlin Allred had a double-barreled shotgun drawn on him by Frank Graves, was seized by Willie Graves and two other defendants, and was hit in the mouth and nose by Willie Graves "bursting two teeth." Peggy Allred, while in the house, was shot in the right shoulder by persons in a car. Plaintiff, while in the house, was shot in the back by persons in a car and had a double-barreled shotgun drawn on her by Dempsey Odom while she was in the yard. Shots were fired into plaintiff's home and into the automobiles of her daughter Dorothy and her son Merlin. She prays a recovery of $5,000 compensatory damages and of $25,000 punitive damages from all the defendants.

All the defendants filed a joint answer. In their answer they deny assaulting plaintiff or anyone or shooting. They allege they went to plaintiff's house to buy some non-tax-paid liquor. While they were in the front yard, plaintiff's daughter Dorothy Garner screamed and she and persons unknown to them began fighting. All they did was run away. Their sole casualty was Willie Graves, who was hit in the head with an axe.

On 12 August 1963, and after the complaint and answer had been filed, plaintiff, pursuant to G.S. 1-568.11 (a) and (b), filed an application with the clerk of the superior court for an order to examine all nine defendants in the courthouse at Asheboro, Randolph County, the

County of their residence. On the same day the clerk entered an order for their examination, pursuant to G.S. 1-568.11 (c).

The following appears in Judge Walker's order as facts found by him: On the date of the examination all the defendants, except Dempsey Freeman, were present with their attorney, H. F. Seawell, Jr. Before the defendants present were sworn, their attorney made a motion before the clerk of the superior court to dismiss the order of examination for the reason that plaintiff is seeking punitive damages, and if punitive damages are awarded by a jury, a judgment for punitive damages could affect their liberty, and consequently the order of examination is tantamount to requiring the defendants to give evidence against themselves and is contrary to the provisions of the Federal and State Constitutions. The clerk denied the motion, and defendants excepted and appealed. Defendants were then sworn before the commissioner appointed in the order to hold the examination, and each of them refused to answer questions as to whether or not they were with the other defendants on 5 May 1962, and as to whether or not they went to plaintiff's house on that night. Plaintiff through her attorney gave notice that the defendants would be cited for contempt in refusing to answer questions. Whereupon, the parties and their attorneys agreed that the motion for contempt should be heard by the presiding judge at the 16 September 1963 Session.

The parties stipulated before Judge Walker, "the defendants and each of them had heretofore been tried in the superior court of the State of North Carolina for criminal charges growing out of the same facts and circumstances as alleged in the complaint in this civil action, the defendants, through their attorney, contending, however, that this was in the nature of a quasi-criminal action wherein the plaintiff seeks punitive damages against the defendants, and each of them, and * * * that to require them to give testimony in an adverse examination would be in violation of their rights under Article I, section 11, and Article I, section 29 of the North Carolina Constitution."

Judge Walker ruled as a matter of law that sections 11 and 29 of Article I of the State Constitution apply only to criminal actions and do not apply to a civil action in which punitive damages are sought, and that defendants are required to give testimony as required in the order for their examination. Whereupon, he affirmed the order of the clerk for examination of the defendants and the order of the clerk refusing to dismiss the order of examination, and ordered the defendants to appear before the commissioner appointed to hold the examination at such time as may be set by her to answer questions asked them within the scope of the matters set forth in the complaint and answer.

From this order, defendants appeal.

*H. F. Seawell, Jr., for defendant appellants.*
*H. Wade Yates for plaintiff appellee.*

PARKER, J. This appeal presents another facet of the recurring problem of the extent of the constitutional privilege against self-incrimination. Unlike most of the cases which have received the attention of the highest courts, the instant case does not involve a criminal prosecution or the inquisitorial act of a legislative committee. The claim of privilege here is interposed in an examination before trial in a civil action, after filing of the complaint and answer, on the ground that punitive damages are sought.

It is an ancient principle of the law of evidence that a witness shall not be compelled, in any proceeding, to make disclosures or to give testimony which will tend to incriminate him or subject him to fines, penalties or forfeitures. *Ward v. Martin,* 175 N.C. 287, 95 S.E. 621; *Counselman v. Hitchcock,* 142 U.S. 547, 35 L. Ed. 1110; *Brown v. Walker,* 161 U.S. 591, 40 L. Ed. 819; 58 Am. Jur., Witnesses, sec. 43; Annotation 118 A.L.R., p. 628; 98 C.J.S., Witnesses, sec. 431 *et seq.* However, it has been held that this privilege does not apply to penalties of a purely remedial character. 58 Am. Jur., Witnesses, sec. 43. "The facts protected from disclosure are distinctly facts involving a criminal liability or its equivalent." 8 Wigmore, Evidence (1961), p. 331. The rule against self-incrimination has existed from an early date in the English common law, and its origin has been said to be based on no statute and no judicial decision but on a general and silent acquiescence of the courts in a popular demand. This rule, it has been said in *Twining v. New Jersey,* 211 U.S. 78, 53 L. Ed. 97, distinguished the English common law "from all other systems of jurisprudence." It was so well established that on the separation of the colonies from Great Britain and the establishment of the United States, it was universally recognized therein as a part of the fundamental law. *Brown v. Walker, supra.* In *Brown v. Walker,* the Court said:

> "So deeply did the iniquities of the ancient system impress themselves upon the minds of the American colonists that the states, with one accord, made a denial of the right to question an accused person a part of their fundamental law, so that a maxim which in England was a mere rule of evidence became clothed in this country with the impregnability of a constitutional enactment."

The constitutional guaranties against self-incrimination should be liberally construed. *Gouled v. United States*, 255 U.S. 298, 65 L. Ed. 647; *Quinn v. United States*, 349 U.S. 155, 99 L. Ed. 964; *Ullmann v. United States*, 350 U.S. 422, 100 L. Ed. 511, 53 A.L.R. 2d 1008; 98 C.J.S., Witnesses, sec. 432.

The privilege against self-incrimination may be exercised by a witness in any proceeding. It has been held that "even though the constitutional provision is worded simply that no person 'shall be compelled in any criminal case to be a witness against himself,' the privilege of refusing to answer extends to all proceedings sanctioned by law and to any investigation, ex parte or otherwise, litigious or not." 98 C.J.S., Witnesses, sec. 433. This is said in 98 C.J.S., Witnesses, p. 246: "The privilege also applies in civil actions and proceedings, as, for example, with reference to an answer in chancery, a proceeding for discovery or for examination before trial, to interrogations of a party in equity before trial, to the examination of a bankrupt, or an insolvent, or a judgment debtor, to the examination of a trustee in bankruptcy before a referee, to proceedings to take a deposition, * * * and to proceedings to enforce forfeitures."

"Punitive damages are not recoverable in any case as a matter of right. If the pleading and evidence so warrant, an issue as to punitive damages should be submitted to the jury. Upon submission thereof, it is for the jury to determine (1) whether punitive damages in *any* amount should be awarded, and if so (2) the amount of the award. These questions are determinable by the jury in its discretion." *Hinson v. Dawson*, 244 N.C. 23, 92 S.E. 2d 393, 62 A.L.R. 2d 806.

In *Smith v. Myers*, 188 N.C. 551, 125 S.E. 178, the Court said: "Vindictive or punitive damages are treated as an award by way of punishment to the offender and as a warning to other wrongdoers; they are not allowed as a matter of course, but only when there are some features of aggravation, as willfulness, malice, rudeness, oppression, or a reckless and wanton disregard of the plaintiff's rights." In *Transportation Co. v. Brotherhood*, 257 N.C. 18, 125 S.E. 2d 277, *cert. den.* 371 U.S. 862, 9 L. Ed. 2d 100, reh. den. 371 U.S. 899, 9 L. Ed. 2d 131, the Court said: "Punitive damages are never awarded as compensation. They are awarded above and beyond actual damages, as a punishment for the defendant's intentional wrong. They are given to the plaintiff in a proper case, not because they are due, but because of the opportunity the case affords the court to inflict punishment for conduct intentionally wrongful."

In *Tripp v. Tobacco Co.*, 193 N.C. 614, 137 S.E. 871, the Court quotes with approval from *Day v. Woodworth*, 54 U.S. 363, 371, 14 L.

ALLRED v. GRAVES.

Ed. 181, as follows: " 'It is a well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant, having in view the enormity of his offense rather than the measure of compensation to the plaintiff. * * * By the common, as well as the statute law, men are often punished for aggravated misconduct or lawless acts, by means of civil action, and the damages, inflicted by way of penalty or punishment, given to the party injured'." In *Voltz v. General Motors Acceptance Corp.*, 332 Pa. 141, 2 A. 2d 697, the Court said punitive damages "are, as the nomenclature indicates, penal in character."

In *Life and Casualty Insurance Co. v. McCray*, 291 U.S. 566, 78 L. Ed. 987 (992), Mr. Justice Cardozo speaking for the Court said: " 'Penalty' is a term of varying and uncertain meaning. There are penalties recoverable in vindication of the public justice of the state. There are other penalties designed as reparation to sufferers from wrongs."

When the penalty lies in the payment of money, the Courts are in conflict. The following cases hold that the privilege against self-incrimination applies: *Lees v. United States,* 150 U.S. 476 (1893) (action to recover statutory penalty for illegal transportation of aliens; privilege applies) ; *Speidel Co. v. Barstow Co.,* 232 Fed. 617 (D. R. I. 1916) (where a statute imposes triple damages for infringement of a patent, interrogatories for discovery under Equity Rule 58 are privileged from answer) ; *Wilson v. Union Tool Co.,* 275 Fed. 624 (S. D. Cal. 1921) (treble damages for infringement of a patent) ; *Bowles v. Trowbridge,* 60 F. Supp. 48 (N. D. Cal. 1945) (action for treble damages under EPCA; privilege applies) ; *Malouf v. Gully,* 187 Miss. 331, 192 So. 2 (1939) (immunity statute construed to protect against a suit for statutory penalties for illegal liquor sales) ; *Serio v. Gully,* 189 Miss. 558, 198 So. 307 (1940) (same) ; *Zambroni v. State,* 217 Miss. 418, 64 So. 2d 335 (1953) (same) ; *Bailey v. Muse,* 227 Miss. 51, 85 So. 2d 918 (1956) (same) ; *Boyle v. Smithman,* 146 Pa. 255, 274, 23 Atl. 397, 398 (1892) (action to recover penalties for not posting a statement of business done, under a statute declaring that the defendant "shall forfeit and pay" $1,000 for each act; privilege applied) ; *City of Philadelphia v. Cline,* 158 Pa. Super. 179, 44 A. 2d 610 (1945) (action under municipal ordinance to recover penalties for failure to file tax returns; privilege applies) ; Anonymous, 1 Vern. 60, 23 Eng. Rep. 310 (Ch. D. 1682) (bill for tithes; discovery declined, as a treble penalty was collectible; principle apparently sanctioned). These cases hold that the privilege is inapplicable: *Perkins Oil Well Cementing Co. v. Owen,*

293 Fed. 759 (S. D. Cal. 1923) (patent infringement suit for treble damages; privilege inapplicable); *Standard Oil Co. v. Roxana Petroleum Corp.,* 9 F. 2d 453 (S. D. Ill. 1925) (same); *United States ex rel. Marcus v. Hess,* 317 U.S. 537 (1942) (*semble;* "qui tam" for double damages and penalty held not within proscription of double jeopardy clause); *Bowles v. Chew,* 53 F. Supp. 787 (N. D. Cal. 1944) (action for treble damages by Administrator under Emergency Price Control Act; privilege not applicable); *Bowles v. Seitz,* 62 F. Supp. 773 (W. D. Tenn. 1945) (same); *Amato v. Porter,* 157 F. 2d 719 (10th Cir. 1946) (same); *Crary v. Porter,* 157 F. 2d 410 (8th Cir. 1946) (same); *Woods v. Robb,* 171 F. 2d 539 (5th Cir. 1948) (same); *Southern Ry. v. Bush,* 122 Ala. 470, 26 So. 168 (1899) (in an action for death, the damages, though punitive and not compensatory, are not a penalty, and the privilege does not apply to the defendant); *Levy v. Superior Court,* 105 Cal. 600, 38 Pac. 965 (1895) (administrator's citation of one charged with concealing and embezzling the estate of the deceased; the statute provided for double damages; an order of compulsory examination was held proper, the statute being remedial, not penal).

The complaint alleges that all nine defendants, pursuant to a pre-concerted conspiracy, came to plaintiff's house about 8:30 p.m. on Saturday, 5 May 1962, and unlawfully and maliciously assaulted her and certain specified members of her family, and shot into automobiles and into the house.

In this State a person may be arrested and held to bail "in an action for the recovery of damages on a cause of action not arising out of contract where the action is for wilful, wanton, or malicious injury to person or character or for wilfully, wantonly, or maliciously injuring, * * * real or personal property." G.S. 1-410 (1); *Long v. Love,* 230 N.C. 535, 53 S.E. 2d 661. For such acts, when a cause of action is properly alleged and proved and at least nominal damages are recovered by the plaintiff, a jury in its discretion can award punitive damages. *Worthy v. Knight,* 210 N.C. 498, 187 S.E. 771. In such cases, if a judgment is rendered against a defendant for a cause of action specified in G.S. 1-410 (1), G.S. 1-311 authorizes an execution against the person of the judgment debtor, after the return of an execution against his property wholly or partly unsatisfied.

G.S. 23-29, 2, provides that "every person taken or charged in execution of arrest for any debt or damages rendered in any action whatever" is entitled to the benefit of G.S. Ch. 23, Art. 4, which is entitled "Discharge of Insolvent Debtors." The provisions of G.S. 23-29, 2, are broad and strong, and plainly extend to and embrace every person who may be arrested by virtue of an order of arrest issued pursuant to the

provisions of G.S. 1-410, and also extend to and embrace every person who has been seized by virtue of an execution against his person by authority of the provisions of G.S. 1-311. *Burgwyn v. Hall,* 108 N.C. 489, 13 S.E. 222. When a person is taken by authority of an execution against his person by virtue of the provisions of G.S. 1-311, he can be discharged from imprisonment only by payment or giving notice and surrender of all his property in excess of fifty dollars. G.S. 23-23, 23-30 through 23-38. *Oakley v. Lasater,* 172 N.C. 96, 89 S.E. 1063; *Fertilizer Co. v. Grubbs,* 114 N.C. 470, 19 S.E. 597.

In *Oakley v. Lasater,* the Court said: "The effect of an execution against the person, therefore, is to deprive the defendant in the execution entirely of his homestead exemption and of any personal property exemption over and above $50."

Punitive damages under our decisions are undoubtedly by way of punishment imposed by law, and not compensatory. Considering the provisions of G.S. 1-410, G.S. 1-311, and G.S. Ch. 23, Art. 4, we think that part of the instant case seeking punitive damages for an alleged unlawful and malicious assault on plaintiff and malicious injury to her house is penal in its nature, and not in essence for a civil liability, and under such circumstances the award of punitive damages would be in a broad sense a penalty. Penalty "is an elastic term with many different shades of meaning. The term involves the idea of punishment, either corporal or pecuniary, or civil or criminal, although its meaning is generally confined to pecuniary punishment." 70 C.J.S., Penalties, sec. 1. The provisions of our Constitution should receive a liberal construction, especially with respect to those provisions which were designed to safeguard the liberty and security of the citizens in regard to both persons and property. *State v. Harris,* 216 N.C. 746, 6 S.E. 2d 854, 128 A.L.R. 658. Consequently, liberally construing Article I, section 11, of the North Carolina Constitution, which reads in relevant part, "In all criminal prosecutions, every person charged with crime has the right * * * not (to) be compelled to give self-incriminating evidence * * *," in order to carry out its intent and purpose, it is our opinion, and we so hold, that its provisions protect defendants here from being required to answer questions on the order of examination, which will necessarily tend to subject them to a verdict or an award of punitive damages, and to an execution against the person, the effect of which would be to deprive them entirely of their homestead exemption and of any personal property exemption over fifty dollars. Counsel for appellants vividly states in his brief, "no man should be forced to give evidence against himself to put himself in jail." Judge Walker was in error in ruling that Article I, section 11, of the State Constitution

applies only to strictly criminal actions, and does not apply to a civil action in which punitive damages are sought under the facts of the instant case and in requiring defendants to give testimony in the order for their examination, and his order will be modified by striking this out, and by making it conform to what is said above in this opinion. His ruling that Article I, section 29, of the State Constitution applies only to criminal actions and does not apply to a civil action in which punitive damages are sought seems to be superfluous and needs no comment as to its correctness or incorrectness.

"In order to vacate an order for examination, all those authorities hold that it must be plainly apparent that the evidence sought must *necessarily* tend to convict the party to be examined of a crime or to subject him to a penalty or forfeiture." *Ward v. Martin, supra.* To paraphrase what is said in this case, we are inclined to the view that plaintiff should not be denied a plain statutory right to examine defendants here before trial solely because they claim that any answers they make may subject them to a penalty. This rests the matter upon the *ipse dixit* of each defendant and not upon the judgment of the court. Proceeding with the examination will not deny defendants any constitutional right. If any defendant cannot answer the questions, or any of them, propounded to him on the examination without giving testimony that would necessarily tend to subject him in this case to punitive damages, and to an execution against his person, and to a deprivation of his homestead exemption and of any personal property exemption over and above $50, he can then claim his privilege and refuse to answer, and if plaintiff pursues the matter further pursuant to the provisions of G.S. 1-568.18 and G.S. 1-568.19, his claim of privilege can be properly ruled on according to the provisions of these statutes. *Galyon v. Stutts,* 241 N.C. 120, 84 S.E. 2d 822. The judge was correct in affirming the clerk's order refusing to dismiss the order of examination.

There are decisions of this Court holding that a party cannot appeal from an order to appear and be examined under oath concerning the matters set out in the pleadings. *Pender v. Mallett,* 122 N.C. 163, 30 S.E. 324; *Holt v. Warehouse Co.,* 116 N.C. 480, 21 S.E. 919; *Vann v. Lawrence,* 111 N.C. 32, 15 S.E. 1031. In the exercise of our discretion, as the question presented is of first impression here, we have concluded to consider the appeal on its merits. *Ward v. Martin, supra.*

It must not be understood that we express any opinion as to whether or not the allegations of the complaint are sufficient as to punitive damages. That question is not before us on this appeal.

If plaintiff here should seek merely compensatory damages, and should relinquish all claim to punish defendants by punitive damages

and to arrest them by virtue of the provisions of G.S. 1-410 (1) and to issue an execution against their persons by virtue of the provisions of G.S. 1-311, defendants' claim of privilege would not apply. In stating this, we assume that the stipulation entered into by the parties is to the effect that all criminal charges against the defendants, and each one of them, in respect to the facts alleged in the complaint have been finally disposed of.

The order of the judge directing the examination of defendants under the statute, as modified above, is affirmed.

Modified and affirmed.

BOBBITT, J., dissenting: The appeal is premature and should be dismissed. In my opinion, discussion of a defendant's constitutional privilege against self-incrimination should be deferred until such time as such defendant refuses to answer specific questions and then with reference to his refusal to answer such questions.